782 F.2d 7
 121 L.R.R.M. (BNA) 2400, 104 Lab.Cas. P 11,791
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
and
Teamsters Local Union No. 25, International Brotherhood of
Teamsters, Chauffeurs, Warehousemen and Helpers of
America, Intervenor,
v.
CHARLES D. BONANNO LINEN SERVICE, INC., Respondent.
 No. 85-1031.
 United States Court of Appeals,
First Circuit.
 Argued Nov. 14, 1985.
Decided Jan. 24, 1986.
 
 John G. Elligers, Washington, D.C., for petitioner.
 James T. Grady, with whom Gabriel O. Dumont, Jr., Boston, Mass., was on brief, for intervenor.
 Howard I. Wilgoren, with whom Arthur V. Brown and Lepie, Coven & Wilgoren, Framingham, Mass., were on brief, for respondent.
 Before CAMPBELL, Chief Judge, BOWNES and TORRUELLA, Circuit Judges.
 BOWNES, Circuit Judge.
 
 
 1
 The National Labor Relations Board (Board) petitions for enforcement of a decision and order finding that respondent Charles D. Bonanno Linen Service, Inc. (Bonanno) committed certain unfair labor practices in violation of Sec. 8(a)(1) & (3) of the National Labor Relations Act (Act), 29 U.S.C. Sec. 158(a)(1) & (3), and ordering inter alia that Bonanno reinstate four striking employees and put eight others on a preferential hiring list. Bonanno challenges the Board's decision and order on four grounds: first, that there was not substantial evidence on the record to support the Board's finding that the Union's economic strike was converted into an unfair labor practice strike; second, that the Board failed to follow settled principles when it ruled that permanently replaced economic strikers were entitled to the enhanced reinstatement rights of unfair labor practice strikers when the strike is converted to one for an unfair labor practice; third, that the Board's remedy exceeded the scope of the complaint before it; and fourth, that the Board impermissibly failed to explicate the basis for its conclusion.
 
 I. Background
 
 2
 This case began in 1975 when Bonanno authorized a multiemployer group of which it was a member to bargain on its behalf with Teamsters Local Union No. 25 representing its drivers and those of the other employers in the group. After early negotiations proved unfruitful the Union began an economic strike in June 1975, and Bonanno hired permanent replacements for its twelve striking drivers. In November 1975 Bonanno withdrew from the multiemployer group and took no further part in the negotiations. The group and the Union eventually reached an agreement in April 1976. The Union then demanded that Bonanno execute the new collective bargaining agreement, but Bonanno refused on May 3, 1976. The rest of the multiemployer group's employees went back to work, but Bonanno's twelve drivers remained on strike. The Union subsequently filed an unfair labor practice charge, and Bonanno's refusal to execute the collective bargaining agreement was found by the Board to violate Sec. 8(a)(5) & (1) of the Act. This finding was appealed by Bonanno to this court and to the United States Supreme Court, where enforcement was ultimately affirmed. Charles D. Bonanno Linen Serv., Inc., 229 N.L.R.B. 629 (1977), supplemented, 243 N.L.R.B. 1093 (1979), enforced, 630 F.2d 25 (1st Cir.1980), aff'd, 454 U.S. 404, 102 S.Ct. 720, 70 L.Ed.2d 656 (1982).
 
 
 3
 The strike at Bonanno continued until February and March 1977 when all twelve striking drivers submitted unconditional requests for reinstatement to Bonanno. Between May 3, 1976, and the strikers' requests for reinstatement the following February and March, four of the permanent strike replacements hired by Bonanno had departed and been replaced. Despite the unconditional requests, Bonanno refused to offer reinstatement to any of the twelve former strikers. On April 5, 1977, the Union filed another unfair labor charge against the Company for refusing to offer reinstatement to the strikers who, it claimed, had become unfair labor practice strikers when the Company refused to sign the collective bargaining agreement on May 3, 1976. A complaint issued from the Board's General Counsel. A stipulation of facts was entered into on August 30, 1977, but the Board subsequently deferred its decision and order on the complaint while the first unfair labor practice charge was litigated in this court and the Supreme Court. After the Supreme Court upheld ours and the Board's finding that Bonanno had violated Sec. 8(a)(5) & (1) when on May 3, 1976, it refused to honor the collective bargaining agreement, proceedings on this complaint were taken up again and the decision and order at issue in this case followed. The facts remain those of the August 1977 stipulation.
 
 
 4
 The Board found that Bonanno's unfair labor practice of May 3 had converted the drivers' economic strike into an unfair labor practice strike. Consequently, ruled the Board, the twelve striking employees, as unfair labor practice strikers, had an absolute right to any position at the Company that became vacant during the unfair labor practice strike. The Board ruled that Bonanno had committed violations of Sec. 8(a)(3) & (1) when it had denied reinstatement to any of the twelve drivers, and ordered that Bonanno fire the four replacements hired after May 3 and place four of the former strikers in those positions. It also ordered that the remaining eight drivers be placed on a preferential hiring list. The Board issued various cease and desist, posting and notice orders as well. Bonanno's request for reconsideration was denied and, pursuant to Sec. 10(e) of the Act, this petition for enforcement followed.II. Substantial Evidence
 
 
 5
 Bonanno asserts that there is not substantial evidence on the record as a whole to support the Board's finding that the original economic strike was converted into an unfair labor practice strike on May 3, 1976, when the Company refused to execute the collective bargaining agreement reached by the Union and the multiemployer bargaining group. Bonanno claims there must be "direct" evidence of a causal link between the unfair labor practice and the strike's continuation. It asserts that the Board's failure to point to evidence demonstrating that the employees knew that after May 3 their strike was continuing because of Bonanno's unfair labor practice is fatal to the Board's enforcement petition. We disagree. Although it may sometimes be a difficult question whether an economic strike is converted into an unfair labor practice strike when the strike has many causes and motives, see, e.g., Soule Glass and Glazing Co. v. NLRB, 652 F.2d 1055, 1079-82 (1st Cir.1981), such is not the case here. The strike in this case began as an economic strike. When an agreement was reached between the Union and the multiemployer bargaining group the employees' economic demands were satisfied. All the striking employees in the industry, except Bonanno's, ended their strikes. When Bonanno refused to execute the bargaining agreement, that refusal--which was ultimately held to be an unfair labor practice by the Supreme Court--became the sole cause of the strike's continuation beyond May 3. The record shows no other cause. The Board did not need to look beyond this for additional evidence such as statements of strikers or messages on picket signs. The record adequately supports a finding of conversion of the economic strike into an unfair labor practice strike on May 3, 1976.
 
 
 6
 III. Reinstatement Rights of the Unfair Labor Practice Strikers
 
 
 7
 Bonanno asserts that the Board erred in ordering that it fire four employees hired after May 3 and replace them with four strikers because the strikers did not have reinstatement rights to those jobs. It argues that even if the twelve strikers became unfair labor practice strikers on May 3 their reinstatement rights remained "fixed" as those of permanently replaced economic strikers. It is undisputed that the twelve strikers were permanently replaced while they were still economic strikers and that with respect to the jobs still held by those permanent replacements the strikers have no rights to reinstatement. Under the Laidlaw doctrine, permanently replaced economic strikers who unconditionally request reinstatement have rights only to preferential hiring as positions reopen or are newly created, Laidlaw Corp., 171 N.L.R.B. 1366, 1367-70 (1968), enforced, 414 F.2d 99, 103-05 (7th Cir.1969), cert. denied, 397 U.S. 920, 90 S.Ct. 928, 25 L.Ed.2d 100 (1970). In contrast, unfair labor practice strikers have rights to their positions greater than any replacements hired during their strike, and must be rehired upon unconditional request for reinstatement. Mastro Plastics Corp. v. NLRB, 350 U.S. 270, 278, 76 S.Ct. 349, 355, 100 L.Ed. 309 (1956). Bonanno argues that when there is a conversion of an economic strike into an unfair labor practice strike "settled principles" of Board law dictate that strikers permanently replaced during the economic phase of the strike are not entitled to enhanced reinstatement rights. Thus, according to Bonanno, when the twelve applied for reinstatement they had rights only to preferential future hiring, and the Board's order that Bonanno fire four replacements hired after the conclusion of the lawful economic strike and during the unfair labor practice strike is inconsistent with prior law and should not be enforced. We find Bonanno's reading of prior Board cases to be seriously myopic.
 
 
 8
 It is well settled Board law that the conversion of a strike into an unfair labor practice strike, while not enhancing the strikers' reinstatement rights vis-a-vis permanent replacements hired during the preconversion economic strike, does give the strikers the right to force the dismissal of any replacement hired after conversion, upon an unconditional request for reinstatement. NLRB v. Plastilite Corp., 375 F.2d 343, 348 (8th Cir.1967); Philip Carey Mfg. Co. v. NLRB, 331 F.2d 720, 725, 729 (6th Cir.), cert. denied, 379 U.S. 888, 85 S.Ct. 159, 13 L.Ed.2d 92 (1964); Gulf Envelope Co., 256 N.L.R.B. 320, 320 & n. 2, 332 (1981); Cavalier Div. of Seeburg Corp., 192 N.L.R.B. 290, 291 (1971), enforced sub nom. Allied Indus. Workers Local 289 v. NLRB, 476 F.2d 868, 882-83 & n. 23 (D.C.Cir.1973). This rule is consistent with the principles of Laidlaw and Mastro. There is no valid basis for denying enforcement of the Board order directing the Company to fire four replacements hired after May 3 and reinstate four strikers in their place.
 
 IV. Scope of the Remedy
 
 9
 Bonanno asserts that the Board's order, insofar as it requires Bonanno to place the remaining eight unreinstated strikers on a preferential hiring list, is either an abuse of the discretion granted the Board under Sec. 10(c) of the Act or a violation of Bonanno's due process rights. Bonanno asserts that the only unfair labor practice charge brought in the General Counsel's complaint, litigated by the parties, and found by the Board was Bonanno's refusal to discharge the four strike replacements hired after May 3, 1976. Bonanno claims, therefore, that since the Board nowhere found that it violated the rights of the remaining eight strikers, any remedy with respect to them is impermissible. We find this position meritless.
 
 
 10
 First, the reinstatement rights of all twelve striking drivers were properly before the Board, and were fully litigated and decided. The complaint named all twelve striking employees, and recited that each had unconditionally demanded reinstatement and that the employer "has refused and continues to refuse, to offer any of the employees ... reinstatement," in violation of Sec. 8(a)(1) & (3). Bonanno's answer to the complaint also contested the reinstatement rights of all the strikers. It stated that none of the twelve were "legally entitled to reinstatement having been permanently replaced as economic strikers and ha[d] lost their status as employees for purposes of reinstatement." In fact, Bonanno's answer was a misstatement of the law because even permanently replaced economic strikers are still "employees" for purposes of reinstatement. See Fleetwood Trailer Co., 389 U.S. 375, 381, 88 S.Ct. 543, 547, 19 L.Ed.2d 614 (1967); Laidlaw Corp., 414 F.2d at 104. Each of the twelve strikers had reinstatement rights once he requested unconditional reinstatement, rights either to immediate reinstatement or to future preferential hiring. Since the rights of all twelve strikers were contested in the complaint and answer the Board properly determined the issue. It found both a "precise" violation of Sec. 8(a)(3) in Bonanno's refusal to reinstate four of the strikers and a general violation of Sec. 8(a)(1) & (3) in its "general disregard of the reinstatement rights of unfair labor practice strikers."[1] Given this general violation and Bonanno's misapprehension of the legal rights of all the strikers the Board was fully justified in determining the legal rights of all the strikers.
 
 
 11
 Second, the Board's order is squarely within its remedial powers. The Board did no more than order Bonanno to do what it was required to do--rehire the remaining eight employees as positions reopen. Bonanno argues that the Board is ordering it to put the employees on a preferential hiring list even though there is nothing in the stipulated facts that indicates that as of August 1977 it ever failed to give those eight preferential hiring rights. Because such an order is "punitive," says Bonanno, and is more expansive than the violation found, it is an abuse of the Board's discretionary powers under Sec. 10(c). Bonanno's assertion is ludicrous. If the Board may not make a prospective order with regard to preferential hiring then it must wait until each time that a position reopens and an employee with preferential hiring rights is denied employment, and then bring a separate unfair labor practice complaint and litigate it. The entire process could take years. Perhaps this scenario appeals to a party seeking to delay redress for its unfair labor practices as long as possible and at all cost, but it does not effectuate the policies of the Act. Section 10(c) empowers the Board, when it has found an unfair labor practice, "to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this Act." The Board's order in this case effectuates the policies of the Act precisely by ordering Bonanno to recognize and effectuate in the future the present reinstatement rights of each of the twelve employees whose rights it violated. This is not the first time the Board has ordered an employer to put unfair labor practice strikers on a preferential hiring list when no violation of their preferential hiring rights had yet occurred, and some other violation had triggered the remedial order. See Purolator Armored, Inc. v. NLRB, 764 F.2d 1423, 1427 (11th Cir.1985); Electrical Prods. Div. of Midland-Ross Corp. v. NLRB, 617 F.2d 977, 989 (3rd Cir.), cert. denied, 449 U.S. 871, 101 S.Ct. 210, 66 L.Ed.2d 91 (1980); Gulf Envelope Co., 256 N.L.R.B. 320, 332 (1981).
 
 
 12
 Third, the Board's order is not punitive. It does no more than order Bonanno to implement the employees' rights. We are unable to see any unfair prejudice to Bonanno by this order. Bonanno may well be open to contempt penalties if it fails in the future to reinstate any of the strikers.[2] But it had a full and fair opportunity to state and argue its position before the Board.
 
 
 13
 Fourth, there being nothing surprising, punitive, or in any way extraordinary or harsh about this order, Bonanno's claim that his due process rights were violated is without foundation.
 
 
 14
 V. The Board's Stated Basis for the Decision
 
 
 15
 Bonanno's final argument is that the Board made a "quantum leap from a set of facts to a legal conclusion," without adequate explanation of the basis for its conclusion, when it found that because the economic strike was converted into an unfair labor practice strike on May 3 Bonanno committed a separate unfair labor practice when it refused to reinstate any of the twelve strikers who requested reinstatement in February and March 1977. The Board's statement that its conclusion was based on "settled law" is inadequate, argues Bonanno, because the Board departed from settled law. The Board explained that it was applying settled law, and after reviewing the cases cited by the Board, Covington Furniture Mfg. Corp., 212 N.L.R.B. 214 (1974), enforced, 514 F.2d 995 (6th Cir.1975), and Gulf Envelope Co., 256 N.L.R.B. 320 (1981), and the other cases cited in this opinion, we agree. Order Enforced.
 
 
 
 [1]
 Bonanno quotes only one passage in the Board's opinion relating to an unfair labor practice finding, where the Board stated that "we find that [the employer's] precise violation of Section 8(a)(3) was its refusal to reinstate the four former strikers to the positions held by the postconversion replacements." Bonanno claims that this language indicates that the Board only found the precise refusal to reinstate four strikers to be an unfair labor practice. This is wrong. The Board found violations of Sec. 8(a)(1) and (3). It stated in its decision and order: "We find that Respondent thereby violated Section 8(a)(3) and (1) of the Act as a result of its general disregard of the reinstatement rights of unfair labor practice strikers." While Bonanno's failure to reinstate immediately four of the twelve striking employees violated Sec. 8(a)(3), the effect of Bonanno's course of conduct on all twelve employees' Sec. 7 rights was a violation of Sec. 8(a)(1). See R. Gorman, Basic Text on Labor Law 326-41 (1976)
 
 
 [2]
 In fact, it was stated at oral argument that all the positions at Bonanno have reopened and been filled since the stipulation of facts in August 1977. As of now, then, all twelve strikers have rights to immediate reinstatement and back pay except insofar as Bonanno can raise defenses at a back-pay proceeding such as picket-line violence, unavailability because of other employment, etc