Jeffrey **SCHREIBER** and Susan
Schreiber, Plaintiffs,

v.

**RIDGEWOOD BOARD OF EDUCATION,**
Defendant.

Civil Action No. 96–4243.

United States District Court,
D. New Jersey.

Jan. 31, 1997.

Jeffrey Schreiber, Susan Schreiber, Ridgewood, NJ, pro se.

Marilyn Arons, Parent Information Center of New Jersey, Inc., Teaneck, NJ, for Plaintiffs.

Cherie L. Maxwell, Sills, Cummis, Zuckerman, Radin, Tischman, Epstein & Gross, P.A., Newark, NJ, for Defendant Ridgewood Board of Education.

POLITAN, District Judge.

This matter is presently before the Court on the Complaint of plaintiffs Jeffrey Schreiber and Susan Schreiber, parents of minor child R.S., appealing the decision of an Administrative Law Judge pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* A final hearing was held on December 4, 1996. For the reasons stated herein, the decision of the Administrative Law Judge is **AFFIRMED.**

### FINDINGS OF FACT

R.S. is an emotionally disabled child whose disability and educational plan are the disputed subjects of this controversy. R.S. first started exhibiting emotional problems in first grade. Accordingly, in April of 1988 the Ridgewood Child Study Team (hereinafter

"the Study Team") recommended that she be evaluated. Plaintiffs refused such evaluation until over three years later.

In January and September of 1991, R.S. was privately evaluated by Mary MacCracken and Dr. Arnold Gold, respectively. Both evaluators found R.S. to be learning disabled; however, neither diagnosed R.S. as autistic. Thereafter, in October of 1991, plaintiffs permitted the Study Team to evaluate R.S.

After the Study Team examined R.S. in December of 1991, she was classified as neurologically impaired ("N.I."). Consequently, during elementary school, R.S. was placed in mainstream classes with supplemental instruction. Thereafter, in sixth and seventh grade, R.S. was educated in Benjamin Franklin Middle School in Ridgewood. In June of 1994, R.S. was reevaluated at the Study Team's request. The Study Team concluded that R.S. was appropriately classified as N.I.

Subsequently, at the Individual Education Plan ("IEP") meeting for R.S.'s 1994–95 school year, plaintiffs requested that R.S. be placed in a residential program. Defendant Board of Education, however, recommended a private day program, in particular the Bergen County Special Services Alternative Middle School, Garfield program (hereinafter "the Garfield School"). While the parties attempted to agree on a placement, R.S. was placed on home instruction in October of 1994. The next month, plaintiffs requested a due process hearing. In the interim, R.S. was enrolled in the Garfield School, where she is currently being educated.

The parties reached a settlement whereby R.S. was to be reevaluated. Pursuant to the agreement, R.S. was evaluated by Dr. Fellman and Dr. William Chambers. Dr. Fellman diagnosed R.S. as N.I., while Dr. Chambers classified R.S. as suffering from infantile autism. In view of the evaluations, on April 21, 1995, the Study Team recommended that R.S. continue to be classified as N.I. and remain in the Garfield School.

Disagreeing with the classification of R.S. and placement at the Garfield School, plaintiffs instituted a due process petition. An administrative hearing was held before Administrative Law Judge Diana C. Sukovich ("ALJ"). Two weeks of testimony was received between June 28, 1995, and April 25, 1996. On August 13, 1996, the ALJ issued an opinion, holding that R.S. is appropriately classified as N.I. and that residential placement is not the least restrictive environment which will confer an educational benefit upon her.

Consequently, plaintiffs filed the instant Complaint on September 6, 1996, appealing the ALJ's decision. Defendant filed an Answer on October 18, 1996. Thereafter, on November 8, 1996, plaintiffs sought a preliminary injunction placing R.S. in a residential program pending the outcome of this action. Oral argument was heard on November 18, 1996, and the Court denied plaintiffs' application for a preliminary injunction. The Court expedited plaintiffs' Complaint and scheduled a plenary hearing for December 4, 1996. Supplemental testimony was received by the Court on said date.

### a. Testimony at the Administrative Hearing

At the administrative hearing, the Board of Education bore the burden of showing that R.S. was placed in the least restrictive environment in which she would receive an educational benefit. Defendant presented five witnesses. First, defendant offered Elaine Rubel, an expert in learning disabilities and a teaching consultant. (Admin. Tr. Sept. 13, 1995, at 36:8–13). Ms. Rubel testified that R.S. was N.I. and not autistic. (*Id.* at 142:11–14). Moreover, Ms. Rubel stated that R.S. would benefit most from the least restrictive Garfield School, rather than a residential program. (*Id.* at 141:17–25). On cross-examination, Ms. Rubel admitted that she does not work with autistic children (*Id.* at 144–147) and that R.S. was the most unusual child she has tested. (Admin.Tr. Oct. 3, 1995, at 6:6–11). Finally, Ms. Rubel rejected Dr. Adler's diagnosis of autism because of Dr. Adler's own admission that R.S. will continue to be classified as N.I. and the fact that R.S. did not display any signs of autism at an early age. (*Id.* at 45:3 to 46:1).

Next, defendant presented Dr. Joseph Oxhorn, the school psychologist in Ridgewood.

(Admin. Tr. Oct. 5, 1995, at 68:5). Dr. Oxhorn also classified R.S. as N.I. (*Id.* at 86:11–17) and concluded that the least restrictive environment is the current program at the Garfield School. (*Id.* at 152:6–12). Furthermore, Dr. Oxhorn opined that Dr. Gold had not found any evidence of autism (*Id.* at 88:17–18) and that Dr. Vondreel had merely indicated that R.S. displayed some "autistic-like" characteristics. (*Id.* at 92:21–25). While Dr. Oxhorn admitted that he does not deal with autistic children (Admin.Tr. Nov. 6, 1995, at 9:9–16), he concluded that R.S. was not autistic because of his early evaluations of R.S. and her ability to think and express herself coherently. (*Id.* at 22:3 to 23:1).

Defendant also called Valerie McBurney, a social worker with the Study Team, to testify at the hearing.[1] Plaintiffs declined to allow Ms. McBurney to evaluate R.S. at home in 1991 and 1994. Ms. McBurney continually observed R.S. in the Garfield School and, while she noticed a change in her behavior in 1994, she found R.S. to be functioning well and progressing educationally. In conclusion, Ms. McBurney asserted that R.S. was correctly classified as N.I. and appropriately placed in the Garfield School.

Thereafter, defendant called as a witness Eleanor Dante, a speech and language specialist for the Ridgewood school district. (Admin.Tr. Jan. 11, 1996, at 4:24–25). Ms. Dante classified R.S. as N.I. in fifth grade (*Id.* at 11:12–15) and again after a reevaluation in seventh grade. (*Id.* at 16:406). Ms. Dante stated that she saw no reason to question the classification and that the Garfield School was the least restrictive beneficial environment for R.S. (*Id.* at 17:18 to 18:1). In addition, Ms. Dante stated that it was common for N.I. children to display autistic-like characteristics. (*Id.* at 35:24–7).

Finally, defendant presented the testimony of Diane C. Buckingham, the Director of the Garfield School. (Admin. Tr. Jan. 23, 1996, at 4:21–25). Ms. Buckingham described the school and its facilities. (*Id.* at 9 to 40). She stated that there are thirty-nine students in the school (*Id.* at 8:78), that R.S. is one of four N.I. students (*Id.* at 8:21 to 9:3), and that there are only six children per class. (*Id.* at 41:17). Ms. Buckingham confirmed that the Garfield School is successfully meeting R.S.'s educational needs. (*Id.* at 65:23 to 66:2).

Upon the conclusion of defendant's case, plaintiffs called four witnesses. Included in those four witnesses was plaintiff, Mrs. Schreiber, who testified as to R.S.'s problems behaving at home. (*See id.*; Admin. Tr. Jan. 26, 1996; Admin. Tr. Feb. 6, 1996; Admin. Tr. Apr. 24, 1996). Plaintiffs also presented John Campion, who was a member of the Study Team in Ridgewood for fifteen years. (Admin. Tr. Feb. 6, 1996, at 4:21–25). Mr. Campion stated that at that time, autism was not a possible classification and that R.S.'s possible autism was not discussed. (*Id.* at 7:16–20; 21:14–18). Mr. Campion concluded, however, that the preponderance of medical and diagnostic reports indicated that R.S. is not autistic, but is N.I. (*Id.* at 24:6–11).

Next, plaintiffs called as a witness Dr. Kimberli Treadwell, a clinical psychologist at Bancroft Rehabilitation Services. (Admin. Tr. Apr. 24, 1996, at 63:11–16). Against defendant's objection, Dr. Treadwell was accepted by the ALJ as an expert in behavioral disorders. (*Id.* at 76:3–22). Plaintiffs introduced Dr. Treadwell's opinion that R.S.'s autism would best be treated in a residential program. On cross-examination, however, Dr. Treadwell revealed that she never performed an independent diagnosis of R.S. (*Id.* at 106:22–25) and was merely told by Mrs. Schreiber that R.S. had already been diagnosed as autistic. (*Id.* at 107:7–14).

Finally, plaintiffs presented the testimony of Dr. William Chambers, a full-time faculty member of Columbia University College of Physicians and Surgeons and a private practitioner in child psychology. (Admin. Tr. Apr. 25, 1996, at 5:12–14). Dr. Chambers diagnosed R.S. as suffering from residual infantile autism. (*Id.* at 10:2–7). Dr. Chambers opined that R.S. needs the most inten-

---

**1.** The parties recollect that Ms. McBurney testified at the hearing before the ALJ. Collective efforts and numerous telephone calls, however, have failed to locate the transcript of Ms. McBur-

ney's testimony. Therefore, on the consent of the parties, the Court recollects the testimony through the parties' notes.

sive treatment program available, which typically occurs in residential settings. (*Id.* at 33:15 to 24:6). However, Dr. Chambers admitted that such treatment is possible in settings other than residential programs. (*Id.* at 34:7–9).

### b. Supplemental Testimony

At the hearing conducted before this Court, plaintiffs were permitted to introduce supplemental evidence concerning relevant events which occurred subsequent to the administrative hearing. *See* 20 U.S.C. § 1415(e)(2); *Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 759 (3d Cir.1995). Plaintiffs called six witnesses. First to testify was Dr. Daniel Adler, a pediatric neurologist with the Neurology Group of Bergen County. (Tr. at 7:8–18). While Dr. Adler did not testify at the administrative hearing, his report was submitted for the ALJ's review. (*Id.* at 6:18–25). In his previous report, dated June 23, 1994, Dr. Adler stated that R.S. "will continue to be classified as [N.I.]" and is "within the autistic spectrum of disease." (*See* Def. Ex. 35). Dr. Adler testified that he visited with R.S. one week before the instant hearing but that R.S. would not speak to him. (Tr. at 10:5–10).

Plaintiffs also presented additional testimony from Dr. Chambers. Based on plaintiffs' recitation of R.S.'s behavior over the past few months, Dr. Chambers maintained his diagnosis of autism. (*Id.* at 15:1–13). Furthermore, Dr. Chambers posited that autism is a form of N.I. (*Id.* at 22:25–23:6). Dr. Chambers noted plaintiffs' observation that R.S. was exhibiting more aggression than she had previously. (*Id.* at 15:22–16:24). During Dr. Chambers's meeting with R.S. in November of 1996, R.S. was largely mute. (*Id.* at 21:13–22:3). Dr. Chambers, however, observed R.S. lunge at her mother while they were discussing the reason for the instant hearing, *i.e.*, placing R.S. in a residential program. (*Id.* at 16:22–17:10). Furthermore, Dr. Chambers discussed with plaintiffs the results of a new study which endorsed the use of drugs to control R.S.'s aggressive behavior. (*Id.* at 17:15–18:9). Currently, the drug therapy has reduced

R.S.'s tendency toward aggression. (*Id.* at 19:2–8).

Next, plaintiffs called Joseph Tuzzolo, a teacher at the Garfield School. (*Id.* at 26:13–16). Mr. Tuzzolo, who teaches R.S. in two classes, stated that R.S. has a problem staying focused during class and can be disruptive by getting up or being late. (*Id.* at 27:7–18; 28:24–29:1). On a weekend in September of 1996, Mr. Tuzzolo observed R.S. wandering in the park unchaperoned. (*Id.* at 31:1–17). Mr. Tuzzolo stated that R.S. is one of twelve students in a class. Mr. Tuzzolo opined that R.S. needs a more structured and self-contained educational environment. (*Id.* at 34:1–3; 34:16–35:2). In conclusion, Mr. Tuzzolo stated that compared to the fifteen other autistic students he has taught, R.S. is highly functional when focused and more behaviorally adapted. (*Id.* at 30:3–24; 37:24–32:5; 39:23–40:8).

Plaintiffs also relied on the testimony of Mr. Steven F. Santucci, a police officer for the Village of Ridgewood. (*Id.* at 43:21–24). Officer Santucci recounted an incident on November 12, 1996, at 3:49 p.m., in which a local store owner reported that R.S. was sitting in the middle of his store laughing and would not leave. (*Id.* at 44:5–46:9; *See* Pl. Ex. 16). The officer escorted R.S. home to her brother and her parents were notified. (*Id.*)

In conclusion, plaintiffs themselves testified. Both parents stated their concern for R.S.'s safety because of her increased wandering and tendency to run away. (Tr. at 47:3–48:1). Mrs. Schreiber stated that R.S.'s behavior at home has deteriorated and become more threatening. (*Id.* at 51:3–25; 63:14–65:6). Moreover, plaintiffs believe that R.S. is not progressing educationally at the Garfield School, although no details or instances were given. (*Id.* at 48:2–4; 68:9–12). Mrs. Schreiber stated she is concerned that R.S. spends too much time alone when she is not in school. (*Id.* at 70:21–71:24). Plaintiffs posited their belief that R.S. should be placed in a residential program. (*Id.* at 50:2–12).

Mrs. Schreiber revealed that the Division of Youth and Family Services ("DYFS") contacted her regarding the problems R.S. was having at home. (*Id.* at 74:5–7). Mrs.

Schreiber admitted, however, that she refused assistance from or the recommendations of DYFS. (*Id.* at 74:8–77:19). Currently, a new Study Team is evaluating R.S. for high school. (*Id.* at 61:22–62:6; 67:18–68:1). Dr. Schreiber stated that the only person who has observed R.S. at home was Mr. Rinadlo, a member of the new Study Team. (*Id.* at 50:16–20).

Plaintiffs request that this Court overrule the ALJ's decision and find that R.S. is autistic rather than N.I. In addition, plaintiffs seek the Court to place R.S. in a residential program at the Bancroft School.

### CONCLUSIONS OF LAW

 Although IDEA does not specifically set forth the standard of review the district court must apply, "complete *de novo* review is inappropriate." *Remis by Trude v. New Jersey Dep't of Human Servs.*, 815 F.Supp. 141, 143 (D.N.J.1993). Rather, the district court can set aside the administrative disposition "only if, after giving due weight to [the] decision, it finds that [the party challenging the outcome of the administrative proceeding] has proved by a preponderance of the evidence that [the] decision was erroneous." *Id.* In doing so, a court must first determine whether the state has complied with the statutory procedures. *Board of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester County v. Rowley*, 458 U.S. 176, 206, 102 S.Ct. 3034, 3050–51, 73 L.Ed.2d 690 (1982). Second, the court must determine whether the IEP developed through such procedures is "reasonably calculated to enable the child to receive educational benefits." *Id.* at 206–07, 102 S.Ct. at 3050–51. Accord *Carlisle Area Sch. v. Scott P. by Bess P.*, 62 F.3d 520, 527 (3d Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1419, 134 L.Ed.2d 544 (1996).

 In reviewing the administrative decision, "Congress made abundantly clear that courts should decide such cases only after serious and thorough examination of the record of proceedings undertaken by education professionals and the insights of those experts into problems of the subject child." *Carey on Behalf of Carey v. Maine Sch. Admin. Dist. No. 17*, 754 F.Supp. 906, 923

(D.Me.1990). The courts reviewing the actions of state authorities brought under IDEA must not substitute their own notions of sound educational policies for those of school authorities which they review. *Hendrick,* 458 U.S. at 206, 102 S.Ct. at 3050–51; *accord Adler by Adler v. Education Dep't of State of N.Y.,* 760 F.2d 454, 458 (2d Cir.1985).

In the instant case, as in all cases involving the well-being of a child, the Court is called upon to make very complex and sensitive decisions. The Court sympathizes with plaintiffs' dilemma in finding the ideal surrounding for R.S. Moreover, the Court appreciates the concerns of R.S.'s parents and their desire to provide her with the best opportunities available. Their search for the most beneficial program for R.S. will most likely be never-ending. The hard work of parents of a disabled child is never done. After careful evaluation of the evidence, however, the Court concludes that plaintiffs have failed to show by a preponderance of the evidence that R.S. is autistic or that residential placement is required.

 The weight of the evidence presented to the ALJ and before this Court illustrates that R.S. is N.I. and not autistic. The statutory standard requires that deference be given to the factual findings of the ALJ. At the administrative hearing, defendant's witnesses—Elaine Rubel, Dr. Joseph Oxhorn, Valerie McBurney and Eleanor Dante—all classified R.S. as N.I. Even one of plaintiffs' witnesses, John Campion, stated that the preponderance of medical and diagnostic reports support the finding that R.S. is N.I. At best, there are only two doctors who have diagnosed R.S. as autistic. Only one doctor, Dr. Chambers, conclusively holds that R.S. suffers from residual infantile autism. Dr. Adler's diagnosis is not conclusive in that his report states that R.S. will continue to be classified as N.I., yet also reports that her behavior is in the "autistic spectrum of disease." Neither doctor's supplemental testimony before this Court as to the nature of R.S.'s disability differed from the evidence that was previously presented at the administrative hearing.

Even if the Court were to conclude that Dr. Adler classifies R.S. as autistic, the overwhelming evidence is that R.S. is N.I. The Study Team and an army of professionals have been evaluating R.S. since elementary school. She has been subjected to numerous psychological tests which reveal her neurological impairment. Therefore, the Court finds that the ALJ's decision was proper and plaintiffs have failed to show by a preponderance of the evidence that R.S. should be classified as autistic rather than N.I.

■ The Court is next faced with the more challenging question of R.S.'s educational placement. IDEA requires that a disabled child be placed in the least restrictive environment that will provide the child with an educational benefit. 20 U.S.C. § 1412(5)(B). Courts have "recognized that for some disabled children a residential program, rather than a day program, is" the least restrictive alternative. *Board of Educ. of East Windsor Regional Sch. Dist. v. Diamond on behalf of Diamond,* 808 F.2d 987, 992 (3d Cir.1986). The cost of residential placement is only properly borne by the school district when such full-time placement is necessary for *educational purposes* and not "when the residential placement is a response to medical, social or emotional problems" that can be segregated from the learning process. *Kruelle v. New Castle County Sch. Dist.,* 642 F.2d 687, 693 (3d Cir.1981). *See, e.g., M.C. on behalf of J.C. v. Central Regional Sch. Dist.,* 81 F.3d 389, 394 (3d Cir.) (affirming district court's ruling that residential placement appropriate where severely retarded child no longer made progress "to reduce [the child's] severe self-stimulatory behavior or improve his toileting, eating or communication skills"), *cert. denied,* —— U.S. ——, 117 S.Ct. 176, 136 L.Ed.2d 116 (1996); *Kruelle,* 642 F.2d at 694–96 (holding that district court did not err in finding residential placement necessitated by "combination of physical and mental handicaps" of profoundly retarded thirteen-year old child with six-month-old social skills); *North v. District of Columbia Bd. of Educ.,* 471 F.Supp. 136, 141 (D.D.C.1979) (holding residential academic program necessary for sixteen-year-old multiply-handicapped epileptic child because "medical and emotional problems [were] so intertwined 'that realistically it [w]as not possible for the court to'" separate them); *Ladson v. Bd. of Educ. of D.C.,* No. 78–2263, 3 EHLR 551:188 (D.D.C. Mar. 12, 1979) (finding residential placement warranted to educate eleven-year old child with mental capacity of eighteen-month old because of Down's Syndrome). While it is the school district's duty to prove that the IEP it recommends is appropriate, it does not also bear the burden of showing that an alternative more restrictive placement suggested by the parents is inappropriate. *Carlisle,* 62 F.3d at 533–36 (affirming district court's conclusion that residential placement, although a more intensive educational plan, was not required by IDEA).

■ Here, the Court finds that, in total, R.S. has benefited and continues to progress in the Garfield School. The ALJ was faced with the testimony of two doctors who believed that residential placement was warranted. An analysis of these recommendations, however, calls into question their reliability. First, Dr. Kimberli Treadwell, one of plaintiffs' witnesses before the ALJ, recommended residential treatment for R.S. Dr. Treadwell, however, never independently diagnosed R.S. and her recommendation was based merely on Mrs. Schreiber's representation that R.S. had already been labeled autistic. Even plaintiffs' strongest witness, Dr. Chambers, stated that while a residential program would be the most intense for R.S., other nonresidential settings may be appropriate.

In contrast, defendant demonstrated below that R.S.'s behavior and education have improved since her enrollment in the Garfield School. Plaintiffs' own witness, R.S.'s teacher Mr. Tuzzolo, stated that R.S. performs above average when focused. Moreover, Mr. Tuzzolo stated that R.S. is behaviorally and educationally better than any autistic child he has taught. Plaintiffs have presented no evidence to the contrary with regard to R.S.'s educational abilities. The complaints received by the doctors and school personnel, as well as those concerns articulated by plaintiffs, primarily deal with R.S.'s behavior at home and after school. However, neither

the Court nor the school district can be charged with caring for a disabled child at all times. Federal and State laws merely require that basic educational opportunities be provided through individual programs. Hence, the Court concurs with the ALJ's decision that the Garfield School is the least restrictive environment which provides an educational benefit to R.S.

The Court notes and is concerned with the discrepancies in the description of the Garfield School program set forth by the school director, Ms. Buckingham, and that described by R.S.'s teacher, Mr. Tuzzolo. For example, the size of classes and availability of one-on-one aides. The Court is confident, however, that given R.S.'s unique characteristics, constant and further evaluation of her educational needs will be addressed by defendant. Furthermore, the Court acknowledges that defendant is bound by the conditions set forth by the ALJ.

## CONCLUSION

For the foregoing reasons, the Court finds that plaintiffs have failed to demonstrate by a preponderance of the evidence that R.S. is autistic or that residential placement is appropriate. Accordingly, the Court holds that the administrative decision is **AFFIRMED.**

An appropriate Order accompanies this Opinion.

## *ORDER*

**This matter** having come before the Court on Complaint of plaintiffs Jeffrey Schreiber and Susan Schreiber, parents of minor child R.S., appealing the decision of Administrative Law Judge Diane C. Sukovich pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.,* and the Court having held a plenary hearing on December 4, 1996, and the Court having considered the matter, including the submissions of the parties, and for the reasons appearing more particularly in the Letter Opinion of this Court in the above-captioned matter, and good cause having been shown,

**IT IS** on this 31st day of January, 1997 hereby

**ORDERED** that the administrative decision is hereby **AFFIRMED.**