63 So.2d 358

**ALCOHOL DIVISION OF DEPARTMENT OF FINANCE AND TAXATION OF TENNESSEE v. STATE ex rel. STRAWBRIDGE.**

**FORD v. STATE ex rel. STRAWBRIDGE.**

**LAUDERDALE v. STATE ex rel. STRAWBRIDGE.**

**6 Div. 396, 396–A, 396–B.**

Supreme Court of Alabama.

Feb. 26, 1953.

Rushton, Stakely & Johnston, Montgomery, Young & Young, Vernon, and Roy H. Beeler, Atty. Gen., Nashville, Tenn., for appellant.

Si Garrett, Atty. Gen., and Robt. Straub, Asst. Atty. Gen., for appellee.

SIMPSON, Justice.

This appeal involves three cases wherein the State of Alabama, on relation of the solicitor of the 24th Judicial Circuit, filed condemnation proceedings in the circuit court of Lamar County, Alabama, to condemn two motor vehicles (a Chevrolet truck and a Ford coach automobile) and a truckload of bonded whisky allegedly. being transported in interstate commerce from Cairo, Illinois, to Columbus, Mississippi. The shipment was from a wholesale liquor dealer in Illinois to a customer in Mississippi. The property was seized February 17, 1951. Right of condemnation was rested on the Alabama statute inhibiting the transportation of prohibited liquors in Alabama.

The truck was owned by one Scott, of Columbus, Mississippi, to whom the liquor was consigned. The Ford was owned by appellant, Alcohol Division of the Department of Finance and Taxation of the State of Tennessee, which department of the Tennessee state government also claimed ownership of the whisky. The three cases (proceedings to condemn the two motor vehicles and the whisky) were consolidated and tried together and by agreement of the parties are so submitted here. The trial court entered a decree of condemnation, hence this appeal.

We said above that the liquor was allegedly being shipped in interstate commerce and we think such was its true status. To conclude otherwise would seem to result in a holding that the Alcohol Division of the Department of Finance and Taxation of the State of Tennessee and the law enforcement authorities, including the Governor, were engaged in a gigantic conspiracy to violate Alabama's liquor law (or that they were trying to shield persons who were), which would certainly, to say the least, tax judicial credulity. We will first state what seems to us to be the overwhelming weight of the evidence and then refer to the countervailing contention of the appellee.

Defendants Lauderdale and Ford were employees and undercover agents of the aforesaid Alcohol Division of Tennessee

and had been assigned by that department, with the approval of the Governor, to search out and discover certain liquor violations in that area of the United States, including Tennessee. Both the defendants Ford and Lauderdale, as well as the Commissioner of Finance and Taxation of Tennessee, Mr. J. Clarence Evans, and the Director of the Alcohol Division of that department, a Mr. Palmore, testified unequivocally to that effect and gave in detail the plan of operation and the genuine and lawful purpose for which the plan had been inaugurated. It is unnecessary to relate here the details of the plan. The overall picture will be sufficient. On January 19, 1951, Commissioner Evans met in joint session in Atlanta with the Commissioner of Georgia, the Chairman of the Alcoholic Beverage Control Board of North Carolina and corresponding officials of the States of Virginia, South Carolina, Mississippi and Florida, to discuss the common problems with respect to the shipment of liquor into the several states in this southern area. As a result of that meeting, it was decided to employ undercover agents of the State of Tennessee in an attempt to obtain evidence necessary to better control certain of that liquor traffic and to stop certain practices deemed to be improper by those officials. In order to entrap the guilty parties (the wholesale liquor dealers of Illinois and other states), it was decided to be necessary to have undercover agents for that purpose and defendant Lauderdale was assigned that task. Lauderdale made contact with a "customer" in Mississippi, the said Scott, who also testified in the case that he had ordered the shipment of whisky and that it was to be delivered to him beyond the Alabama line in Mississippi. There was a bill of lading affirming such a consignment, which was introduced in evidence. After the aforesaid meeting of the authorities in Atlanta, Lauderdale immediately went to work and made the aforesaid contact with Scott and also a contact with the M. & B. Wholesale Liquor Company, Inc., a wholesale dealer in Cairo, Illinois. Lauderdale made some other contacts in other states and in building up his proof against the

wholesale dealers hauled several loads of whisky to various individuals in various states, including several loads of whisky to Scott in Mississippi. All of appellants' witnesses testified that it was on one of these hauls, when Lauderdale was acting in line of duty and driving the truck, when the sheriff of Lamar County intercepted him on Highway 82 as he was proceeding west toward Columbus. His arrest occurred just a short distance from the Mississippi line, across which he was to go to deliver the truck to customer Scott. Defendant Ford, also an employee of the Alcohol Division of Tennessee, had been deputized to follow Lauderdale and the truckload of whisky in order to protect Lauderdale and guard the merchandise from "highjackers." Ford's authority also emanated from Mr. Evans and Mr. Palmore of the Department of Finance and Taxation of Tennessee. Ford was carrying out his commission and following Lauderdale in the Ford automobile and one Argo, also a special investigator and employee of said Alcohol Division of Tennessee, was in the truck with Lauderdale as a guard for him.

If the foregoing facts are correct, and we think they are, then none of the property was contraband or subject to seizure and condemnation by the Alabama authorities. The principle is well recognized that if the shipment was as described by the defendants' witnesses, it was one in interstate commerce and not subject to state interference. Indeed, the learned Attorney General of Alabama so held in an opinion rendered January 23, 1941, when an assistant in that office. Quarterly Report of the Attorney General [1941], Vol. XXIII, p. 241. In that particular case on which the Attorney General's office was giving advice to the solicitor of the Eleventh Judicial Circuit of Alabama, a truckload of bonded whisky on consignment from Cairo, Illinois, to Biloxi, Mississippi, was wrecked in Lauderdale County. While the drivers of the truck were loading the whisky in another truck to continue the journey to Mississippi, local authorities seized the truck and contents and arrested the drivers. The ruling of the Attorney General was that the shipment was in in-

terstate commerce and not subject to state control or interference. The correctness of that well-reasoned opinion cannot be questioned and we are in accord with it.

■ Such has been the consistent holding in this jurisdiction. Transportation of intoxicating liquors from one state through another state is within the protection of the commerce clause of the federal constitution and not subject to state interference. And this is true regardless of whether the state to which the liquor is being shipped prohibits the sale and traffic in such liquors. The Twenty-first Amendment to the Federal Constitution, together with the Webb-Kenyon Act, 27 U.S.C.A. § 122, which prohibits the transportation or importation of intoxicating liquors into any state for delivery or use therein in violation of its laws, does not render such liquor contraband while passing through Alabama into another state for disposition in violation of the laws of the latter state, nor authorize seizure and condemnation of such liquors and the transporting vehicles under Alabama statutes. Barnett v. State ex rel. Milner, 243 Ala. 410, 9 So.2d 267; Moragne v. State, 200 Ala. 689, 77 So. 322, L.R.A.1918E, 948; Hill v. State, 27 Ala. App. 573, 176 So. 805, certiorari denied, 235 Ala. 8, 176 So. 806; Opinion of the Attorney General of Alabama, supra.

■ The appellee seems not to question the soundness of these legal principles, but argues that there was countervailing evidence to support a conclusion that the liquor was being shipped for delivery into a dry county in Alabama, in which case the property would be subject to seizure and condemnation, citing Mahoney v. Joseph Triner Corp., 304 U.S. 401, 58 S.Ct. 952, 82 L.Ed. 1424; Indianapolis Brewing Co. v. Liquor Control Commission, 305 U.S. 391, 59 S.Ct. 254, 83 L.Ed. 243; 21st Amendment, United States Constitution.

■■ This principle is also not subject to question and as supporting that theory, the argument of the able assistant Attorney General seems to be rested on testimony of Officer Lauderdale that he had two bills of lading for the whisky, one consigned to Scott in Columbus, Mississippi, and another addressed to him, Highway 80 west of Vernon, Alabama. Lauderdale's explanation of this was that the bill of lading to Vernon was made out by the wholesaler for use in the event he was intercepted with the whisky outside of Alabama, but that the interstate shipment was in fact designed to be delivered to Scott across the Alabama line in Mississippi. True, this circumstance is to be considered in weighing the verity of the testimony of Lauderdale, as well as that of the rest of appellants' witnesses. But the whisky was in all respects legal in so far as the federal statutes were concerned, having been duly stamped with United States revenue stamps. So, whether Lauderdale was acting as a lawful officer of Tennessee or was transporting the whisky for himself or the wholesaler would be immaterial to the instant inquiry. If in fact he was transporting the merchandise interstate from Illinois through Alabama into Mississippi, his cargo would not be contraband but protected as interstate commerce. That he was so transporting the whisky is supported by the overwhelming weight of the evidence. He had passed through Vernon, proceeding toward the Mississippi line, was first observed by the sheriff about five miles from the line traveling at a speed of approximately seventy-five to eighty miles per hour, and was not overtaken until he was within one-quarter of a mile of the state line. Evidently he was proceeding as fast as possible through Alabama toward Mississippi and little credence can be accorded the idea that he was to deliver the whisky in this state.

■ Moreover, as we stated at the outset, if the circumstance of having two bills of lading is to be credited as showing that the entire scheme of Lauderdale and his Tennessee confederates was a hoax, then we must entirely discredit the testimony of all the trusted law enforcement officers and department heads of our sister state of Tennessee who were witnesses in the case. Under the proof adduced, we do not think there would be warrant for any such conclusion. Lauderdale kept his superior officers informed of his movements. He still has their confidence. He was on the

388

state pay roll as a special investigator for the Alcohol Division, was being furnished the Ford coach, a state automobile, for his work and money for his expenses, including several thousand dollars to purchase whisky in his undercover work. Immediately upon his arrest he notified his superior officer of his predicament and steps were taken immediately for his release. While the Alabama officers are to be commended for their diligence in enforcing the prohibition laws of Alabama, we are persuaded that the great weight of the evidence shows the claim of the State of Tennessee and its said officers to be bona fide and that the liquor was on its interstate journey from Illinois to Mississippi when intercepted near the state line, and was not subject to seizure and condemnation by the Alabama authorities.

So considered, the decree below must be reversed and one here rendered discharging the property.

Reversed and rendered.

LIVINGSTON, C. J., and LAWSON, STAKELY and MERRILL, JJ., concur.