United States Court of Appeals,

Eleventh Circuit.

No. 96-2772.

FLORIDA DEPARTMENT OF BUSINESS REGULATION and Robert Butterworth, Plaintiffs-Appellants,

v.

ZACHY'S WINE AND LIQUOR, INC., et al., Defendants,

Rochambeau Wines and Liquors, Inc., et al., Defendants-Appellees.

Oct. 24, 1997.

Appeal from the United States District Court for the Northern District of Florida. (No. 95-40462-WS), William Stafford, Judge.

Before ANDERSON, DUBINA and CARNES, Circuit Judges.

DUBINA, Circuit Judge:

The State of Florida ("State") brought an action seeking to enjoin four out-of-state, mail-order wine distributors from violating Florida's liquor laws, Fla. Stat. Ann. § 561 *et seq.* The district court dismissed the complaint for lack of subject matter jurisdiction. We affirm.

## I. STATEMENT OF THE CASE

Defendants/appellees ("defendants") are four out-of-state[1] wine retailers who solicit direct mail-order business from Florida residents. The State contends that this practice violates Florida's Beverage Laws, Fla. Stat. Ann. § 561 *et seq.* Those laws provide that alcoholic beverages imported into Florida must be shipped to a licensed, in-state manufacturer or distributor and may be sold only by licensed, in-state vendors. Fla. Stat. Ann. §§ 561.14, 561.54, 561.57. The Florida Division of Alcoholic Beverages and Tobacco notified defendants of the alleged violations, but defendants did not alter their business practices.

The State filed a five-count complaint against defendants seeking an injunction compelling defendants to comply with the licensing requirements of the Florida Beverage Laws. The State also alleged state law claims for payment of unpaid excise taxes, sales taxes, and license fees. The State

---

[1]Three of the defendants are located in California; one is located in New York.

invoked jurisdiction under 28 U.S.C. § 1331, which provides that district courts shall have jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States, and 28 U.S.C. § 1337, which provides that district courts shall have jurisdiction over actions arising under acts of Congress regulating commerce. Specifically, the State claimed that its federal claim arose under the Twenty-first Amendment, the Wilson Act, 27 U.S.C. § 121, and/or the Webb-Kenyon Act, 27 U.S.C. § 122. The State contended that the district court had supplemental jurisdiction over the Florida state law claims pursuant to 28 U.S.C. § 1367(a).

Defendants moved to dismiss for lack of subject matter jurisdiction. The district court granted the motion, finding that neither the Twenty-first Amendment, the Wilson Act, nor the Webb-Kenyon Act supplied a federal right of action for failure to comply with state liquor laws. In the absence of a federal claim, the district court concluded that it lacked subject matter jurisdiction to hear the case. The State then perfected this appeal.[2]

On appeal the State argues that the Webb-Kenyon Act provides the State with a federal cause of action to enjoin the direct shipment of alcoholic beverages to Florida residents by out-of-state distributors in violation of state liquor laws. The State abandons its reliance on the Twenty-first Amendment and the Wilson Act.

## II. DISCUSSION

A. *Background of the Webb-Kenyon Act*

"Since the founding of our Republic, power over regulation of liquor has ebbed and flowed between the federal government and the states." *Castlewood Int'l Corp. v. Simon,* 596 F.2d 638, 641 (5th Cir.1979). In *The License Cases,* 46 U.S. (5 How.) 504, 579, 12 L.Ed. 256 (1847), the Supreme Court recognized broad state authority to regulate alcohol, noting that states were free from the implied restrictions of the Commerce Clause. U.S. Const. art.I, § 8, cl.3. In 1890, however, the

---

[2]In addition to the parties' briefs, we have the benefit of an amicus brief from the United States and an amicus brief from the National Alcohol Beverage Control Association, Inc., and the National Conference of State Liquor Administrators. Both amicus briefs support the State's position.

Court struck down an Iowa law regulating the sale of liquor shipped from out-of-state. *Leisy v. Hardin,* 135 U.S. 100, 10 S.Ct. 681, 34 L.Ed. 128 (1890). The Court held that the law ran afoul of the Commerce Clause's grant to Congress of exclusive authority to regulate commerce among the states. In response to *Leisy,* Congress passed the Wilson Act later that same year. The Wilson Act provided that alcoholic beverages shipped from out-of-state became subject to the laws of the receiving state upon arrival in that state.[3]

The Supreme Court held that the Wilson Act was constitutional. *See In re Rahrer,* 140 U.S. 545, 11 S.Ct. 865, 35 L.Ed. 572 (1891). However, the Court later ruled that the Wilson Act did not authorize application of state regulatory laws to liquor still in transit, and did not allow states to prohibit individuals from ordering liquor for personal consumption from out-of-state vendors. *See Rhodes v. Iowa,* 170 U.S. 412, 18 S.Ct. 664, 42 L.Ed. 1088 (1898); *Vance v. W.A. Vandercook Co.,* 170 U.S. 438, 18 S.Ct. 674, 42 L.Ed. 1100 (1898).

In 1913, Congress closed these loopholes by passing the Webb-Kenyon Act, which was entitled "An act divesting intoxicating liquors of their interstate character in certain cases." The Webb-Kenyon Act prohibits the shipment or transportation of liquor into a state if the liquor is intended to be received, possessed, sold, or otherwise used in violation of the law of the receiving state. The Act specifically provides:

> The shipment or transportation, ... of any ... intoxicating liquor of any kind, from one State, ... into any other State ... which ... intoxicating liquor is intended, by any person interested therein, to be received, possessed, sold, or in any manner used, either in the original package or otherwise, in violation of any law of such State, ... is hereby prohibited.

---

[3]The Wilson Act specifically provides:

> All ... intoxicating liquors ... transported into any State or Territory ... for use, consumption, sale, or storage therein, shall upon arrival in such State or Territory be subject to the operation and effect of the laws of such State or Territory enacted in the exercise of its police powers, to the same extent and in the same manner as though such ... liquors had been produced in such State or Territory....

27 U.S.C. § 121.

27 U.S.C. § 122. In *James Clark Distilling Co. v. Western Md. Ry. Co.,* 242 U.S. 311, 37 S.Ct. 180, 61 L.Ed. 326 (1917), the Court stated that the purpose of the Webb-Kenyon Act "was to prevent the immunity characteristic of interstate commerce from being used to permit the receipt of liquor through such commerce in States contrary to their laws, and thus in effect afford a means by subterfuge and indirection to set such laws at naught." 242 U.S. at 324, 37 S.Ct. at 184.

The Twenty-first Amendment was ratified in 1933. In addition to repealing Prohibition, the Twenty-first Amendment in effect constitutionalizes the Webb-Kenyon Act. Section 2 of the Twenty-first Amendment "reserves to the States power to impose burdens on interstate commerce in intoxicating liquor that, absent the Amendment, would clearly be invalid under the Commerce Clause." *Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 712, 104 S.Ct. 2694, 2707, 81 L.Ed.2d 580 (1984) (citations and quotations omitted). Section 2 "represents the only express grant of power to the states, thereby creating a fundamental restructuring of the constitutional scheme as it relates to one product—intoxicating liquors." *Castlewood Int'l Corp.,* 596 F.2d at 642.

B. *Whether Florida has an implied right of action*

The Webb-Kenyon Act does not explicitly provide that states may bring a cause of action in federal court to enforce its terms. Nevertheless, the State contends that it has an implied federal right of action under the Webb-Kenyon Act. The district court disagreed and so do we.

There is very little case law on this subject. One reported decision addresses this issue directly and was heavily relied upon by the district court. *See Georgia v. Wenger,* 94 F.Supp. 976 (E.D.Ill.1950), *aff'd,* 187 F.2d 285 (7th Cir.1951).[4] In *Wenger,* the State of Georgia brought a suit for damages in federal district court against an Illinois defendant who allegedly had shipped liquor to Georgia without paying Georgia taxes and warehouse charges. The defendant moved to dismiss for lack of jurisdiction, arguing that there was no federal question because Georgia's claims arose

---

[4]*Wenger* predates modern implied right of action analysis, discussed *infra;* however, it is useful because it is on point.

under state law.  Georgia argued that it had a federal right under the Webb-Kenyon Act and the Twenty-first Amendment.  The district court agreed with the defendant and found no right of action.

The district court in *Wenger* outlined the history and purpose of both the Twenty-first Amendment and the Webb-Kenyon Act. The district court noted that in passing the Twenty-first Amendment, Congress, the states, and the people of the United States intended "to place the states in position to put their respective policies relating to intoxicants into effect by state legislation without hindrance due to constitutional limitation applicable to ordinary articles of commerce." *Wenger,* 94 F.Supp. at 982.  The Twenty-first Amendment also "anticipated and rendered harmless a possible repeal of the Webb-Kenyon Act." *Id.* The district court stated that it found no authority that the Webb-Kenyon Act nor the Twenty-first Amendment gives rise to any legal right which will sustain a cause of action for damages.  Accordingly, the district court concluded:

> Both by history and by judicial interpretation in the light of history the intended scope and purpose of [the Twenty-first Amendment and the Webb-Kenyon Act] is to divest liquor in interstate commerce of its interstate character so as to deprive it of all immunity from state control.  Neither serves to give the states enforceable civil rights but only serves as enabling authority for broader state legislation relating to intoxicants.

*Id.* at 981-82.  The Seventh Circuit affirmed, stating that the district court "correctly held that no cause of action of the nature asserted here arose under the [Twenty-first] Amendment or the Webb-Kenyon Act." *Wenger,* 187 F.2d at 287.

The State contends that *Wenger* is distinguishable because it involved a claim for monetary damages under the Webb-Kenyon Act, and here, by contrast, the State seeks injunctive relief only.[5] This is a distinction without a difference.  The analytical starting point is ascertaining whether Florida has an independent right of action under the Webb-Kenyon Act. If the State does, then—and only then—does the court reach the question of what remedies are available to the State.  *See Franklin v. Gwinnett County Pub. Schs.,* 503 U.S. 60, 65-66, 112 S.Ct. 1028, 1032, 117 L.Ed.2d 208 (1992)("As we have often stated, the question of what remedies are available under a statute that

---

[5]We note, however, that even though the State seeks *injunctive* relief only under the Webb-Kenyon Act, its state law claims are for *monetary damages.*

provides a private right of action is analytically distinct from the issue of whether such a right exists in the first place.")(quotation and citation omitted). Thus, we do not believe *Wenger* is distinguishable merely because it involved a claim for damages.[6]

The United States, as amicus, argues that *West Virginia v. Adams Express Co.,* 219 F. 794 (4th Cir.1915), is a more appropriate precedent. In *Adams Express,* West Virginia brought an action in state court to enjoin Ohio defendants from direct-mailing liquor to West Virginia residents in violation of state law. The defendants removed the action to federal district court. The district court denied the injunction on the ground that the state law was invalid under the Commerce Clause. The Fourth Circuit reversed, holding that the Webb-Kenyon Act was "a direct recognition of the right of the state to prohibit the receipt or delivery as well as the possession and use of liquor, without trespassing upon the power of Congress to regulate interstate commerce." *Id.* at 801. Consequently, the state law was valid and entitled West Virginia to injunctive relief.

The State argues that *Adams Express* indicates that the Webb-Kenyon Act permits states to enforce their liquor laws in federal court. The *Adams Express* court, however, did not state that West Virginia had a right of action under Webb-Kenyon itself. The district court noted that the defendants invoked removal jurisdiction because "the suit is one arising under the Constitution or laws of the United States." 219 F. 331 (S.D.W.Va.1914). The court, unfortunately, did not elaborate because the state did not contest this basis for jurisdiction. Thus, the basis for subject matter jurisdiction in that case remains unclear.

In considering the State's contention that it has an implied right of action, we must consider the Supreme Court's pronouncement on this topic. The Court has set forth four relevant factors to determine whether a statute implies a right of action:

> First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted"—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy

---

[6]During oral argument, in response to a panel member's question regarding whether *Wenger* is distinguishable, counsel for the State was unable to provide the court with an adequate response other than the one mentioned in the brief and discussed *infra.*

6

or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975)(quotation & citations omitted). Subsequent decisions have clarified that the most important factor is whether Congress intended to create a cause of action. *See e.g., Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 15-16, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979); *Collins v. FMHA-USDA,* 105 F.3d 1366, 1367-68 (11th Cir.), *cert. denied,* --- U.S. ----, 117 S.Ct. 2528, 138 L.Ed.2d 1028 (1997). "Congressional intent to create a private right of action will not be presumed. There must be clear evidence of Congress's intent to create a cause of action." *Baggett v. First Nat'l Bank of Gainesville,* 117 F.3d 1342, 1345 (11th Cir.1997)(citing *Touche Ross & Co. v. Redington,* 442 U.S. 560, 570, 99 S.Ct. 2479, 2486, 61 L.Ed.2d 82 (1979)). The State and its *amici* argue that application of this analysis compels a ruling in Florida's favor. We disagree.

In considering the four *Cort v. Ash* factors, only the first one favors Florida's position: the Webb-Kenyon Act was enacted for the benefit of the states. The most important factor—Congressional intent—weighs against the State. The State cites no affirmative evidence that Congress intended the Act to create an independent cause of action enforceable in federal court. Indeed, the United States concedes in its amicus brief that "there is no express legislative history confirming the right of states to enforce Webb-Kenyon, ..." Br. of United States at 13.

Nor does it appear that the legislative history implicitly supports an independent cause of action under Webb-Kenyon. The United States' brief, for example, quotes one of the Act's sponsors, Senator Kenyon, as stating that the Act's "purpose, *and its only purpose,* is to remove the impediment existing to the States in the exercise of their police powers regulating the traffic or control of intoxicating liquors within their borders." Br. of United States at 5 (emphasis added). If the *only* purpose of the Act was to grant states authority to exercise their own police powers, it follows that the Act did not also create a federal cause of action.

7

In addition, Congress passed the Reed Amendment in 1917, which originally banned the advertisement of liquor and provided for federal criminal enforcement of the Webb-Kenyon Act. Congress intended to "ma[ke] the liquor traffic a Federal offense in certain cases, instead of merely subjecting that traffic to the operation of State laws." H.R.Rep. No. 74-1258, at 3 (1935). From 1919 to 1933, the Webb-Kenyon Act and the Reed Amendment were superseded by the Prohibition laws. But in 1933, the Twenty-first Amendment became effective, ending Prohibition, and effectively constitutionalizing the Webb-Kenyon Act. In 1934, Congress amended the Reed Amendment to delete the provisions banning the advertising of liquor.

In 1936, Congress enacted the "Liquor Enforcement Act," which was an act "To Enforce the Twenty-First Amendment to the Constitution." *See* H.R. 8368, 74th Cong. (1936); 49 Stat.1928, ch. 815 (June 25, 1936). Section 3 of the new act made it illegal to import liquor into any state if (1) the state required a permit for the importation of the liquor, and the liquor was not accompanied by a permit, or (2) the state banned the importation of alcohol altogether. *See* H.R. 8368, 7th Cong. § 3 (1936), codified at 18 U.S.C. § 1262. Section 9 of the new act repealed the Reed Amendment. *See* H.R. 8368, 7th Cong. § 9 (1936).

According to the committee report accompanying the new act, Congress intended to "relieve the States of federally imposed prohibition," H.R.Rep. No. 74-1258, at 4, and "conform [federal law] to the intent of the twenty-first amendment, that is, to avoid Federal prohibition laws which give the States more protection than they want." *Id.* at 8. Congress designed a system whereby

> the regulation of the liquor problem is to be left to the States, with the assurance that the Federal Government will afford them affirmative protection against violations directed from outside their borders.

H.R. Rep. 74-258, at 4. The idea was that if states provided the federal government with clear indications of what they wanted to keep out, the federal government would criminalize the importation of such items into the objecting states. *See id.* at 5.

The legislative history of the Webb-Kenyon Act demonstrates that if Congress had intended to provide a civil remedy for violations of the Act, then it could have done so explicitly, as it did

with criminal sanctions. The legislative history of the Reed Amendment, as well as the Webb-Kenyon Act, is ambiguous and is not "clear evidence" of an intent to create a federal civil cause of action. *Baggett,* 117 F.3d at 1345.[7]

Therefore, the first two *Cort v. Ash* factors do not support the implication of a right of action. We need not reach the other two factors. *See Taylor v. Citizens Fed. Sav. & Loan Ass'n,* 846 F.2d 1320, 1322 (11th Cir.1988)(citing *California v. Sierra Club,* 451 U.S. 287, 297-98, 101 S.Ct. 1775, 1781, 68 L.Ed.2d 101 (1981)).[8]

The State urges this court to find an implied federal cause of action because it needs a federal forum to enforce its liquor laws. The Supreme Court, however, has rejected necessity as a rationale for implying a right of action. *See Touche Ross & Co. v. Redington,* 442 U.S. 560, 575, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979)("We need not reach the merits of the arguments concerning the "necessity' of implying a private remedy and the proper forum for enforcement of the rights asserted by ... for we believe such inquiries have little relevance to the decision of this case."). The State

---

[7]We note that a bill was introduced in the House of Representatives last March titled, "A bill to amend the Webb-Kenyon Act to allow any state, territory, or possession of the United States to bring an action in federal court to enjoin violations of that act or to enforce the law of such state, territory, or possession with respect to such violations." This bill, which is still in committee, indicates at the very least that some members of the present Congress feel that the Congress which originally enacted the Webb-Kenyon Act did not provide states with a right of action.

[8]Assuming *arguendo* that we considered the other factors, they reinforce our conclusion that the Webb-Kenyon Act does not imply a federal cause of action. Considering the third factor, implying a right of action is not consistent with the underlying purpose of the Webb-Kenyon Act—to remove Commerce Clause objections to state liquor regulations. *See. e.g., Craig v. Boren,* 429 U.S. 190, 205-06, 97 S.Ct. 451, 461-62, 50 L.Ed.2d 397 (1976); *McCormick & Co. v. Brown,* 286 U.S. 131, 140-41, 52 S.Ct. 522, 526, 76 L.Ed. 1017 (1932); *James Clark Distilling Co. v. Western Md. Ry. Co.,* 242 U.S. 311, 37 S.Ct. 180, 61 L.Ed. 326 (1917). In fact, the Wilson Act, the Webb-Kenyon Act, and the Twenty-first Amendment worked together "to reinvigorate the State's regulatory role" with respect to alcoholic beverages. *Craig,* 429 U.S. at 205, 97 S.Ct. at 461. The aims of restoring authority to the states and providing a constitutional footing for state regulation are not consistent with creating a federal cause of action. Finally, the last *Cort v. Ash* factor militates against finding an implied federal right of action because states have historically taken the lead in the regulation of alcoholic beverages.

offers no clear reason why it needs a federal forum.[9]  Additionally, states have been enforcing their liquor laws against out-of-state distributors in state courts for years.  *See e.g., Alcohol Div. of Dept. of Finance & Tax. v. Strawbridge,* 258 Ala. 384, 63 So.2d 358 (1953);  *State v. Ward,* 361 Mo. 1236, 239 S.W.2d 313 (1951).

Finally, the State argues that Webb-Kenyon is an "assimilated" act because it subsumes state liquor laws and thereby renders the violation of those laws a breach of federal law, as well.  Florida relies upon *United States v. Sharpnack,* 355 U.S. 286, 78 S.Ct. 291, 2 L.Ed.2d 282 (1958), in which the Court upheld the constitutionality of the Assimilative Crimes Act of 1948 ("ACA").  The ACA criminalized and provided for the prosecution of any action on a federal enclave which would constitute a crime in the state where the enclave was located.  That is, the ACA "assimilated" and federalized state criminal law on federal enclaves.  *Sharpnack* challenged the ACA's inclusion of state criminal law enacted *after* the passage of the ACA. The Court noted that assimilative acts often incorporate future state legislation.  The Court cited several examples, including the Webb-Kenyon Act. 355 U.S. at 294, 78 S.Ct. at 296.  The State argues that under *Sharpnack,* the Webb-Kenyon Act must be read as "federalizing" state liquor laws.

We conclude that the Webb-Kenyon Act is not an assimilated act.  The issue in *Sharpnack* was not whether the ACA or any other statute implied a right of action, but whether the ACA was constitutional.  Also, to say that a particular statute is assimilative does not answer the question of whether it implies an independent right of action.

In conclusion, we hold the State does not have an implied federal cause of action under the Webb-Kenyon Act. Because the district court properly dismissed the State's complaint for lack of subject matter jurisdiction, we affirm the district court's judgment.

AFFIRMED.

---

[9]At oral argument, in response to a question about why the State insists on federal jurisdiction, counsel for the State and the United States claimed that an injunction from a federal court would have more impact than a state court injunction.  We find no merit to this argument because under the Full Faith and Credit Clause, a state court must give deference to another state court's order.  *See* U.S. Const. art.  IV, § 1.