

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-23-1998

# Collinsgru v. Palmyra Bd of Ed

Precedential or Non-Precedential:

Docket 96-5807

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"Collinsgru v. Palmyra Bd of Ed" (1998). *1998 Decisions.* Paper 266.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/266

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed November 23, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 96-5807

ROBERT COLLINSGRU; MAURA COLLINSGRU,
on behalf of their son, Francis Collinsgru,
Appellants

v.

PALMYRA BOARD OF EDUCATION

On Appeal From the United States District Court
For the District of New Jersey
(D.C. Civ. No. 96-cv-00457)

Argued: November 6, 1997

Before: BECKER,* ROTH, Circuit Judges, and
DIAMOND, District Judge.**

(Filed November 23, 1998)

        PAUL A. LEVY, ESQUIRE (ARGUED)
        DAVID C. VLADECK, ESQUIRE
        Public Citizen Litigation Group
        1600 – 20th Street, NW
        Washington, DC 20009

Attorneys for Appellants

_____

*Honorable Edward R. Becker, United States Circuit Judge for the Third
Circuit, assumed Chief Judge status on February 1, 1998.

**Honorable Gustave Diamond, United States District Judge for the
Western District of Pennsylvania, sitting by designation.

        JOSEPH F. BETLEY, ESQUIRE
        CRAIG D. BAILEY, ESQUIRE
          (ARGUED)
        Capehart & Scatchard, P.A.
        8000 Midlantic Drive, Suite 300
        Mt. Laurel, NJ 08054

        Attorneys for Appellee

        ERIC R. NEISSER, ESQUIRE
        Constitutional Litigation Clinic and
         Special Education Clinic
        Rutgers Law School
        15 Washington Street
        Newark, NJ 07102

        Attorney for Amici Curiae

OPINION OF THE COURT

BECKER, Chief Judge.

Robert and Maura Collinsgru ("the Collinsgrus"), acting on behalf of their son, Francis Collinsgru ("Francis"), appeal from the district court's dismissal of their son's complaint against the Palmyra Board of Education ("Palmyra"). The Collinsgrus sought to represent Francis in a civil suit following a state administrative decision to deny their son special education services under the Individuals with Disabilities Education Act, 20 U.S.C. S 1400 et seq. (1994 & Supp. 1997) (the "IDEA").1 The district court found that it was bound by our decision in Osei-Afriyie v. Medical College of Pa., 937 F.2d 876, 882 (3d Cir. 1991), in which we held that a non-attorney parent could not represent his children in a tort action in federal court. After holding that the Collinsgrus could not represent Francis themselves, the court gave the parents thirty days in which to hire an attorney for him. When they failed to do so, the district court dismissed Francis's claims without prejudice for failure to prosecute. On appeal, the Collinsgrus contend

_____

1. Cites to the IDEA will be to the 1997 version of the Act unless otherwise specified.

2

that Osei-Afriyie does not control because: (1) the IDEA creates the same rights in parents that it creates in children; (2) the claims in their son's complaint are functionally their own; and (3) they should therefore be allowed to proceed pro se on those claims.

We first must consider whether we have jurisdiction over this appeal, in light of the fact that the district court's order was neither a final resolution on the merits nor an interlocutory order of the type clearly appealable under 28 U.S.C. S 1292. We conclude that we have jurisdiction under the collateral order exception to 28 U.S.C. S 1291. On the merits, we conclude that the IDEA does not confer joint substantive rights on parents and their children. We agree that the IDEA grants parents ample procedural rights to ensure active parental involvement at all stages of the development and implementation of a child's individual educational program, even through the administrative process. We think, however, that Congress's decision to endow parents with these procedural rights should not be read, under the language of the IDEA, to imply that parents also possess the same underlying substantive rights that their children possess. Therefore, we do not think that the Collinsgrus may properly be said to be suing under their own cause of action. We conclude, in light of the IDEA's language and the statutory and common law rules guarding against non-attorney representation of another, that parents seeking to enforce their child's substantive right to an appropriate education under the IDEA may not represent their child in federal court.

I. Background

At all relevant times, the Collinsgrus resided in Palmyra, New Jersey, and Francis attended the Palmyra Public Schools. The Collinsgrus maintain that Francis is learning disabled, and needs to receive an education that will accommodate his learning disabilities, but the School Board's Child Study Team decided that he was ineligible to receive special education services. Accordingly, the Collinsgrus sought special education services through the administrative procedures established by the IDEA. Under the express provisions of the IDEA, the Collinsgrus were

able to participate in the administrative proceedings without legal representation, though they engaged the assistance of a non-lawyer expert. See 20 U.S.C. S 1415(h)(1). Following a nineteen-day hearing, the Administrative Law Judge ("ALJ") determined that Francis's educational difficulties were not severe enough to warrant special services.

The Collinsgrus, proceeding pro se, filed a civil suit contesting this determination in the District Court for the District of New Jersey. 20 U.S.C. S 1415(i)(2)(A). In their initial complaint, the Collinsgrus alleged that Palmyra had inadequately tested Francis for a disability and that the School Board had interfered with an independent evaluation of his needs. In addition, they contended that the decision by the ALJ was contrary to the law and to the record in the case, and that the ALJ had "manufactured" testimony. Finally, they asserted that the decision was tainted by the public policy position of the State Commissioner of Education that too many students in New Jersey were being labeled as learning disabled. The Board answered the complaint, but also objected by letter to the fact that, rather than hiring a lawyer to represent Francis, the Collinsgrus were attempting to represent him themselves. In response, the Collinsgrus amended the caption of their complaint to emphasize that they were asserting their own rights as parents under the IDEA, as well as their son's rights, to ensure that their son received the free, appropriate education guaranteed by the Act.

The Collinsgrus acknowledge that they would prefer to be represented by experienced counsel rather than continue to pursue their appeal in the federal district court pro se. Although the Collinsgrus are represented by attorneys from the Public Citizen Litigation Group in their appeal before this Court, these attorneys have entered their appearance solely for the purpose of litigating the regionally and nationally important question of the Collinsgrus' right to proceed pro se before the district court. The Collinsgrus concede that they do not qualify for appointment of counsel under the in forma pauperis statute, 28 U.S.C. S 1915 (1994). However, because of the magnitude of this litigation, the Collinsgrus explain that they cannot afford to retain an

4

attorney on a normal fee basis to handle their civil case, nor have they been able to locate an attorney willing to take their case on a contingent fee or pro bono arrangement.

The district court held that the Collinsgrus were not entitled to represent Francis pro se in the civil action, reasoning that this result was compelled by our decision in Osei-Afriyie. The district court also rejected the Collinsgrus' effort to characterize their IDEA appeal as an assertion of their own claims. Rather, the court ruled, Francis was the real party in interest and must be represented by an attorney. The court gave the Collinsgrus thirty days to retain counsel, prescribing that, if counsel were not retained, Francis's claims would be dismissed pursuant to Fed. R. Civ. P. 41(b) for failure to prosecute.

When the Collinsgrus failed to retain counsel, the district court dismissed Francis's claims, staying the parents' claims pending resolution of the present appeal. Although the Collinsgrus sought certification of an interlocutory appeal under 28 U.S.C. S 1292(b) (1994), the district court refused to certify the issue. The court did, however, advise the Collinsgrus that they could invoke the collateral order exception identified in Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541 (1949), in order to seek immediate interlocutory review under 28 U.S.C. S 1291 (1994). The Collinsgrus then filed a motion in the district court requesting that it clarify which claims they could maintain as parents and which only their son could maintain. The district court declined to provide this clarification, concluding that such a ruling would constitute an advisory opinion. This appeal followed.

II. Appellate Jurisdiction and Standard of Review

As a threshold matter, we must determine whether we have jurisdiction to hear this appeal. The district court dismissed only Francis's claims for failure to prosecute; the Collinsgrus appeal from this dismissal, as well as from the related determination that the Collinsgrus could not represent Francis themselves. However, the Collinsgrus also made certain claims on their own behalf under the IDEA; the district court stayed these claims until the issue of

5

Francis's representation is resolved. As a result, the challenged order did not finally resolve the merits of this case, which would have authorized ordinary review under 28 U.S.C. S 1291, nor was the order of an injunctive nature, such that it would have been immediately appealable pursuant to 28 U.S.C. S 1292(a). Both the Collinsgrus and the School Board submit that the question whether parents may represent their children in federal civil actions following administrative findings under the IDEA falls within the collateral order exception to the requirement of finality imposed by S 1291. Despite the agreement of both parties, we have an independent obligation to examine our jurisdiction to hear this appeal. FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 230-31 (1990).

This Court has jurisdiction over interlocutory appeals under S 1291 only if the challenged order falls within the collateral order exception to the finality requirement of S 1291. An appeal from a non-final order will lie if:

> (1) the order from which the appellant appeals conclusively determines the disputed question; (2) the order resolves an important issue that is completely separate from the merits of the dispute; and (3) the order is effectively unreviewable on appeal from afinal judgment.

In re Ford Motor Co., 110 F.3d 954, 958 (3d Cir. 1997). This test derives from the Supreme Court's opinion in Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541 (1949).

The first prong is easily met here. It is beyond dispute that the district court's order of October 29, 1996, denying the Collinsgrus leave to represent their son in a civil suit following the administrative denial of special education rights under the IDEA, leaves no room for further consideration of this issue by the district court. The court's order gave the Collinsgrus thirty days to obtain outside counsel or face dismissal of those claims brought solely on behalf of Francis, for failure to prosecute. The Collinsgrus have no further opportunities before the district court to reopen the question of their ability to represent Francis.

6

The second prong is also satisfied. First, the question whether the Collinsgrus may represent their son in federal district court is entirely separate from the merits of the underlying action. The Collinsgrus argue that they are entitled to represent their son's interests in federal court proceedings under 28 U.S.C. S 1654 and the IDEA. Review of this question will not require us to consider the underlying subject matter of this action -- that is, whether Palmyra improperly denied Francis appropriate special educational services and interfered with the parent's procedural rights. See Devine v. Indian River County Sch. Bd., 121 F.3d 576, 580 (11th Cir. 1997) (stating that immediate review of parental representation would not involve the court in the subject matter of the case), cert. denied, 118 S. Ct. 1040 (1998).

Under the second prong of the collateral order doctrine, we must also examine the importance of the issue to be reviewed. In re Ford Motor Co., 110 F.3d at 959. "[F]or the purposes of the Cohen test, an issue is important if the interests that would potentially go unprotected without immediate appellate review of that issue are significant relative to the efficiency interests sought to be advanced by adherence to the final judgment rule." Id. Accordingly, we must balance the importance of the Collinsgrus' right to represent their son in these proceedings with our interests in finality and in avoiding piecemeal appeals. See id. at 959-60 (citing Lauro Lines S.R.L. v. Chasser, 490 U.S. 495, 503 (1989) (Scalia, J., concurring)). Unless appellants are able to obtain review of the question whether they may represent their son, it appears that they will be unable to proceed in the district court on a number of claims. Moreover, the question of the parents' right to represent their child under the IDEA, already litigated to the court of appeals level in other circuits, see infra, is very important to the administration of the IDEA. Accordingly, we conclude that the question presently before us is of sufficient consequence to outweigh our usual interest in finality.

The final prong of the Cohen analysis is less easily met. This prong requires that the order appealed from be effectively unreviewable after final judgment. The Supreme Court has imposed significant restrictions upon

7

interlocutory appeals of orders regarding legal representation. See Richardson–Merrell, Inc. v. Koller, 472 U.S. 424 (1985) (denying interlocutory appeal from order disqualifying opposing counsel in civil case); Flanagan v. United States, 465 U.S. 259 (1984) (denying interlocutory appeal from an order granting motion to disqualify counsel in a criminal case); Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368 (1981) (denying interlocutory appeal from an order denying motion to disqualify opposing counsel in a civil case). The Court of Appeals for the Eleventh Circuit, facing the same question that we face here, found a relevant difference between questions of representation by counsel, which were raised in these Supreme Court cases, and questions of pro se representation. We agree that the principles of those cases do not prevent us from exercising jurisdiction over the question presented in this case.

The Devine court concluded that the question whether a party may appear pro se in proceedings before a district court cannot be effectively reviewed on appeal."[T]he right to represent one's self is effectively lost if not immediately vindicated," because the harm in erroneously denying a party leave to proceed pro se is that it injures his dignity and autonomy, something that cannot later be repaired. 121 F.3d at 580. Although the dignity/autonomy rationale loses lustre in light of our ultimate holding -- that much of what the Collinsgrus allege is their own case is actually their son's -- we believe that a concern with the rationale is at least colorable in this situation. We also think that questions of appealability should be decided ex ante and not ex post.

Finally, we think that the denial of the right to proceed pro se is analogous to an order denying a litigant leave to proceed in forma pauperis, which is immediately appealable. Roberts v. United States Dist. Court for the N. Dist. of Cal., 339 U.S. 844, 845 (1950). Like denial of leave to proceed in forma pauperis, denial of leave to proceed pro se in a civil action may operate to bar many litigants from prosecuting or defending their claims. Because these orders effectively close the courthouse door to litigants, the majority of courts to consider the issue have held that orders denying leave to proceed pro se are immediately

8

appealable. See, e.g., C.E. Pope Equity Trust v. United States, 818 F.2d 696 (9th Cir. 1987); O'Reilly v. New York Times, 692 F.2d 863 (2d Cir. 1982). But see Flora Constr. Co. v. Fireman's Fund Ins. Co., 307 F.2d 413 (10th Cir. 1962) (denying interlocutory appeal of court's refusal to permit company to appear pro se by its non-attorney president).

We conclude that, because of the impact of the order on the litigant's case, the district court's order denying the Collinsgrus leave to represent Francis is effectively unreviewable on appeal from a final judgment, and hence we have jurisdiction to hear this appeal.

We review for abuse of discretion a district court's dismissal for failure to prosecute pursuant to Rule 41(b). Donnelly v. Johns-Manville Sales Corp., 677 F.2d 339, 341 (3d Cir. 1982). However, to the extent that the district court's dismissal of Francis's claims was based upon its construction of the IDEA, we will exercise plenary review. See In re TMI, 67 F.3d 1119, 1123 (3d Cir. 1995), cert. denied sub nom Metropolitan Edison Co. v. Dodson, 517 U.S. 1163 (1996).

III. Discussion

A. The Right to Proceed Pro Se

It has long been recognized that a litigant in federal court has the right to proceed as his or her own counsel. 28 U.S.C. S 1654 (1994) ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel . . . ."). In contrast, under Rule 17 of the Federal Rules of Civil Procedure, minors are precluded from determining their own legal actions. Rather, under Rule 17(c), a representative or guardian "may sue or defend on behalf of the infant." It is, however, well-established in this Circuit that the right to proceed pro se in federal court does not give non-lawyer parents the right to represent their children in proceedings before a federal court. See Osei-Afriyie v. Medical College of Pa., 937 F.2d 876, 883 (3d Cir. 1991). Other circuits follow this rule as well. See Devine, 121 F.3d at 581-82; Cheung v. Youth Orchestra Found., 906 F.2d 59, 61 (2d Cir. 1990); Meeker v. Kercher, 782 F.2d

9

153, 154 (10th Cir. 1986); Johns v. County of San Diego, 114 F.3d 874, 876-77 (9th Cir. 1997); Hickey v. Wellesley Sch. Comm., 14 F.3d 44, 1993 WL 527964, at *2 (1st Cir. Dec. 21, 1993) (unpublished disposition).

Our leading case regarding the ability of parents who are not attorneys to represent their children in federal court actions is Osei-Afriyie. Francis Osei-Afriyie brought, on behalf of himself and his two daughters, a number of tort claims relating to the treatment of his daughters for malaria. The case came before this court after Osei-Afriyie, a non-attorney, had represented himself and his daughters in a trial in the district court. A verdict was entered against him and his daughters after the jury found that he had not brought the case within the applicable statute of limitations. The district court had erroneously failed to instruct the jury regarding tolling of the statute of limitations in cases involving minors. We directly attributed this error to Osei-Afriyie's lack of experience and training as a lawyer. 937 F.2d at 882. Accordingly, we vacated the district court's judgment to the extent that it adjudicated the children's claims and remanded these claims. We held that the Osei-Afriyies could opt to obtain counsel, request appointment of counsel under the in forma pauperis statute, or let the children wait until they were old enough to pursue their own claims pro se, but the children could not be represented by their father. Id. at 883. Accord Johns, 114 F.3d at 876-77; Cheung, 906 F.2d at 62.

The requirement of representation by counsel is based upon two cogent policy considerations. First, there is a strong state interest in regulating the practice of law. Requiring a minimum level of competence protects not only the party that is being represented but also his or her adversaries and the court from poorly drafted, inarticulate, or vexatious claims. See Brown v. Ortho Diagnostic Sys., Inc., 868 F. Supp. 168, 172 (E.D. Va. 1994) (noting that "the conduct of litigation by a nonlawyer creates unusual burdens not only for the party he represents, but also for his adversaries and the court"). The second consideration is the importance of the rights at issue during litigation and the final nature of any adjudication on the merits. Not only is a licensed attorney likely to be more skilled in the

10

practice of law, but he or she is also subject to ethical responsibilities and obligations that a lay person is not. In addition, attorneys may be sued for malpractice. See id.

There are additional reasons why we are reluctant to find that Congress intended parents to be able to represent their children in IDEA cases. First, there is a well-established presumption that Congress is understood to legislate against a background of common-law principles. "[T]he courts may take it as given that Congress has legislated with an expectation that the [common-law] principle will apply except `when a statutory purpose to the contrary is evident.' " Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 108 (1991). See also 3 Sutherland Statutory Construction S 61.03 (Norman Singer ed., 5th ed. 1992) ("When there is no indication that Congress . . . intended to abolish a well-established common-law doctrine through the passage of a statute, the act will be interpreted in a way that will preserve the common-law doctrine."). In United States v. Texas, 507 U.S. 529 (1993), the Court held that "[i]n order to abrogate a common-law principle, the statute must `speak directly' to the question addressed by the common law." Id. at 534. Indeed, a "party contending that legislative action changed settled law has the burden of showing that the legislature intended such a change." Green v. Bock Laundry Mach. Co., 490 U.S. 504, 521 (1989). And in United States v. Ron Pair Enters., Inc., 489 U.S. 235 (1989), the Court noted that this rule of statutory interpretation is particularly apt when the statutory provision at issue is ambiguous, when prior law reflected significant policy considerations of longevity and importance, and when a proposed interpretation is in clear conflict with an important federal or state law. Id. at 245.

The rule that a non-lawyer may not represent another person in court is a venerable common law rule. See, e.g., Herrera-Venegas v. Sanchez-Rivera, 681 F.2d 41, 42 (1st Cir. 1982) (noting that federal courts have consistently rejected attempts at third-party lay representation); Guajardo v. Luna, 432 F.2d 1324, 1325 (5th Cir. 1970) (stating that an ordered society has a valid interest in limiting legal representation to licensed attorneys); Brown v. Ortho Diagnostic Sys., Inc., 868 F. Supp. 168, 170 (E.D. Va.

11

1994) ("Except in the rarest of circumstances, federal courts have been uniformly hostile to attempts by non-attorneys to represent others in court proceedings."). We are reluctant to assume, absent strong evidence to the contrary, that Congress intended to override this well-settled rule using ambiguous statutory language. In light of the rule's significant policy implications, we hold that the plaintiffs have failed to meet their burden of showing Congress's intent to change the common-law rule against non-lawyer representation.

It is true that remedial statutes like the IDEA are to be construed liberally. The rule of liberal construction, however, appears to be most often applied to the remedies created, not the parties permitted to invoke the statute. See Miller v. Robertson, 266 U.S. 243, 248 (1924) (holding that a remedial provision should be liberally construed to give a remedy in all cases intended to be covered); United States v. Stephens, 208 F.2d 105, 107 (5th Cir. 1953) ("[C]ourts cannot, upon the pretence [sic] of construing[a statute], enlarge its coverage to bring within it those not expressly or by clear intendment embraced within its terms.").

Yet another tool of statutory construction helps us understand what Congress intended. The canon of expressio unius est exclusio alterius means that explicit mention of one thing in a statute implies a congressional intent to exclude similar things that were not specifically mentioned. See Russello v. United States, 464 U.S. 16, 23 (1983) (holding that "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely [sic] in the disparate inclusion or exclusion"); United States v. Azeem, 946 F.2d 13, 17 (2d Cir. 1991) (explaining the doctrine). In the IDEA, Congress expressly provided that parents were entitled to represent their child in administrative proceedings. That it did not also carve out an exception to permit parents to represent their child in federal proceedings suggests that Congress only intended to let parents represent their children in administrative proceedings.

B. Plaintiffs' Joint Rights Theory

The Collinsgrus proffer a second argument, in which they contend that the analysis of whether parents may proceed pro se on behalf of their children is different under the IDEA than it is under a tort case like Osei-Afriyie. They assert that because an IDEA appeal involves the nature of the education to be afforded to their son, it is very much their own case. As parents, they are responsible for their son's education. See Meyer v. Nebraska, 262 U.S. 390, 400 (1923) ("[I]t is the natural duty of the parent to give his children education suitable to their station in life. . . ."). They are entitled to make fundamental decisions regarding his education. See, e.g., Pierce v. Society of Sisters, 268 U.S. 510 (1925) (enjoining enforcement of Compulsory Education Act, which prevented parents from choosing to send their children to private schools); Meyer, 262 U.S. at 400-03 (holding that parents are entitled to control the education of their children and that the state may not arbitrarily proscribe certain areas of instruction). Accordingly, the Collinsgrus assert that they are the real parties in interest in this case.

They recognize, of course, that Meyer and Pierce, which are grounded in the Due Process Clause of the Federal Constitution, are insufficient to confer upon them the right to represent their children, and that the IDEA itself must be the source of any such right. They contend, however, that the Act does contain authority for them to represent not only their own rights and interests, but also, albeit indirectly, those of their son in proceedings before the district court. We therefore turn to the IDEA to determine whether Congress intended to create substantive rights in the parents of disabled children.

    1. Introduction

The primary purpose of the IDEA is

        to ensure that all children with disabilities have
        available to them a free appropriate public education
        that emphasizes special education and related services
        designed to meet their unique needs; to ensure that the
        rights of children with disabilities and parents of such

13

> children are protected; . . . and to assess, and ensure
> the effectiveness of, efforts to educate children with
> disabilities.

20 U.S.C. S 1400(d). For the most part, the IDEA is unambiguous as to what rights it provides to parents and children. It clearly grants parents specific procedural rights, which they may enforce in administrative proceedings, as well as in federal court. Additionally, the IDEA permits parents to represent their children in administrative due process hearings before state or local agencies. 20 U.S.C. S 1415(h)(2); 34 C.F.R. S 303.422(b)(2) (providing that parents have the right to present evidence and examine witnesses in administrative due process hearings held pursuant to the IDEA).

The statute also creates a right to bring a civil action in federal court following a state administrative decision on the adequacy of the child's individualized education program (the "IEP"). Id. S 1415(i)(2)(A). The Collinsgrus concede that the IDEA does not explicitly provide parents with the right to continue to represent their children in federal district court. Instead, they argue that the language of the IDEA, as well as the statute's underlying policy concerns, exhibit Congress's intent to create joint rights in the child and the parents to have the child educated appropriately. As we shall now explain, we do not think Congress displayed such an intent, and therefore decline to import the concept of joint rights into the IDEA byfinding that the Collinsgrus are a real party in interest in Francis's case.

In any case turning on statutory interpretation, our goal is to ascertain the intent of Congress. Dole v. United Steelworkers of America, 494 U.S. 26, 35 (1990). To accomplish this goal, we begin by looking at the statute's language. If the language is plain, we need look no further. United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989). If the statutory language is ambiguous or unclear, we may look behind the language to the legislative history for guidance. United States v. Sherman, 150 F.3d 306, 313 (3d Cir. 1998).

In this case, we will require relatively clear evidence of Congress's intent to create joint rights in the IDEA. We note

14

here that the Collinsgrus' argument is analogous to asking us to find that they possess a private right of action under the IDEA. As we have stated in the context of private rights of action, "Where a statute does not explicitly create a right of action for a particular party, a court may find such a right implied only where it can confidently conclude Congress so intended." State of New Jersey v. Long Island Power Auth., 30 F.3d 403, 421 (3d Cir. 1994). See also Florida Dept. of Bus. Regulation v. Zachy's Wine and Liquor, Inc., 125 F.3d 1399, 1403 (11th Cir. 1997) (same), cert. denied, 118 S. Ct. 1402 (1998). Compare Touche Ross & Co. v. Redington, 442 U.S. 560, 572 (1979) (noting that when Congress wished to provide a private damage remedy in the Securities Exchange Act of 1934, it knew how to do so and did so expressly).

We also note that the Supreme Court has "long since abandoned its hospitable attitude toward implied rights of action." Thompson v. Thompson, 484 U.S. 174, 190 (1988) (Scalia, J., concurring). Because the case at bar is comparable to a request for a private right of action, we take heed of this guidance; only if we can "confidently conclude" from the text and legislative history of the IDEA that Congress intended to create joint rights will we find such rights in the Act.

### 2. Language of the IDEA

Unlike many cases that raise issues of statutory construction, we deal here not with a particular statutory phrase, but with language scattered throughout the statute. The Collinsgrus point to a number of words or phrases that, they argue, evidence Congress's intent to treat parents as parties in interest. First, they rely on language in S 1415 that provided attorneys' fees to the "parents or guardian of a handicapped child or youth who is the prevailing party." S 1415(e)(4)(B) (1988). However, in 1997 Congress amended this section to read, ". . . to the parents of a child with a disability who is the prevailing party," which suggests that it is the child who should be considered the prevailing party. Id. S 1415(i)(3)(B) (1997). Second, they point to S 1415(e)(4) (1988), which prohibits attorneys' fees for services performed after settlement offers. However,

15

S 1415(e)(4)(E) (1988) allows for the award of attorneys' fees "to a parent or guardian who is the prevailing party" if he was substantially justified in rejecting the settlement offer. (This section is now S 1415(i)(3)(E) (1997) and refers to "a parent who is the prevailing party.") The plaintiffs contend that these subsections make clear that an IDEA suit is the parents' own case for 28 U.S.C. S 1654 pro se representation purposes. However, it is just as logical to read this language simply as a reference to the procedural cases in which parents clearly have standing as parties.

Third, the Collinsgrus point to another discussion of attorneys' fees that states, "[W]henever the court finds that . . . the attorney representing the parent did not provide to the school district the appropriate information in the due process complaint . . . the court shall reduce . . . the amount of attorney's fees." Id. S 1415(i)(3)(F)(iv) (emphasis added). However, in the same section, the statute places the notice requirement either on "the parent of a child with a disability, or the attorney representing the child." Id. S 1415(b)(7). While the former language may be read to suggest that it is the parent's case, the latter language suggests that it is the child's case.

Fourth, the Collinsgrus invoke the IDEA's introductory language, which states that one purpose of the IDEA is "to assure that the rights of handicapped children and their parents or guardians are protected." Id.S 1400(c) (1988) (emphasis added) (now S 1400(d)(1)(B), which states that one purpose is to "ensure that the rights of children with disabilities and parents of such children are protected"). However, as noted earlier, it is undisputed that parents do possess rights under the IDEA; indeed, they possess explicit rights in the form of procedural safeguards. The Collinsgrus argue that the IDEA draws no clear distinction between procedural and substantive rights, and cite Heldman v. Sobol, 962 F.2d 148 (2d Cir. 1992), for this proposition. In Heldman, the court stated that "the procedural rights, in and of themselves, form the substance of IDEA." Id. at 155. However, the Supreme Court has distinguished quite clearly between substantive and procedural rights under the Act. In Board of Education v. Rowley, 458 U.S. 176 (1982), the Court stated:

16

> When the elaborate and highly specific procedural
> safeguards embodied in S 1415 are contrasted with the
> general and somewhat imprecise substantive
> admonitions contained in the Act . . . [i]t seems to us
> no exaggeration to say that Congress placed every bit
> as much emphasis upon compliance with procedures
> giving parents and guardians a large measure of
> participation at every stage of the administrative
> process . . . as it did upon the measurement of the
> resulting IEP against a substantive standard.

Id. at 205-06.

In short, the language of the IDEA is unclear on its face. Some of its language can be read to suggest that Congress intended parents and children to share the underlying substantive right -- that is, that Congress meant both to give children a substantive right to an appropriate education and to give their parents the substantive right to have their children receive an appropriate education. But it is equally logical to read the IDEA the other way. Under these circumstances, in which the Collinsgrus have not made out their case convincingly, we turn to the legislative history of the Act for further guidance.

### 3. Legislative History of the IDEA

The legislative history offers little additional guidance about Congress's purported intent to create joint rights in parents and children. On one hand, the Senate Report, in discussing a mediation option in the 1985 amendments, states, "Although the law has worked very well in most cases, Congress knew that there would be instances where parents would be denied the free appropriate public education to which their handicapped child was legally entitled . . . ." 131 Cong. Rec. S1979 (Feb. 6, 1985) (statement of Sen. Weicker) (emphasis added). Earlier, in considering amendments to the forerunner to the IDEA, the Education of the Handicapped Act ("EHA"), the Senate Report stated that "parents of [learning disabled] children have the right to expect that individually designed instruction to meet their children's specific needs is available." S. Rep. No. 94-168, at 10 (1975), reprinted in

17

1975 U.S.C.C.A.N. 1425, 1434. See also id. at 32, 1975 U.S.C.C.A.N. at 1456 (stating that under the Committee's bill, a state's application for federal funds shall provide that "special education and related services shall be provided at no cost to the parents of a handicapped child"); id. at 42, 1975 U.S.C.C.A.N. at 1465 (defining "free appropriate public education" as "special education and related services . . . to be provided at public expense, without charge to the parents or guardians of a handicapped child").

On the other hand, the legislative history refers to the responsibility of the states to "develop procedures for appointing the parent or another individual to represent the interests of the child," which suggests that the role of the parent is to represent solely the interests of the child, not to represent jointly held substantive rights. S. Rep. No. 105-17 (1997), 1997 WL 258948, *49. In addition, the Senate Report to the 1985 amendments to the EHA indicated that the Act "established an enforceable right to free appropriate public education for all handicapped children." 131 Cong. Rec. S1979 (1985). The Report also noted that the right to judicial review offers protection for those rights, thus making the procedural rights of the parents appear derivative of the substantive right of the child. See id. See also 121 Cong. Rec. S37412 (1975) (remarks of Sen. Stafford) (referring to "the rights of the child"); S. Rep. No. 94-168, at 7, 1975 U.S.C.C.A.N. at 1431 (discussing the protection of "the rights of handicapped children"); S. Rep. No. 105-17, 1997 WL 258948, *56 (stating that S 1415 simplifies the process of delivering notices to parents about their child's rights).

We conclude that the legislative history sheds little light on Congress's intent to create joint rights. The above-cited comments are merely snippets plucked from broad discussions of the general statutory goals of the Act and do not arise from explicit discussions of the issue at hand. Because neither the statutory language nor the legislative history clearly implies that Congress intended parents to have joint rights with their children under the IDEA, we will not read joint rights into the Act.

18

## 4. Caselaw

We note here that the two other courts of appeals to consider this issue have reached the same conclusion we reach today. In Devine, the Eleventh Circuit chose not to accept the plaintiffs' argument that the IDEA and its regulations authorize parental representation. 121 F.3d at 581. Instead, the court found no indication that Congress intended to allow parents to present evidence and examine witnesses on behalf of their children in federal court proceedings. The court noted, "In the absence of such intent, we are compelled to follow the usual rule-- that parents who are not attorneys may not bring a pro se action on their child's behalf -- because it helps to ensure that children rightfully entitled to legal relief are not deprived of their day in court by unskilled, if caring, parents." Id. at 582. The Second Circuit recently raised the same issue sua sponte and reached a similar conclusion. See Wenger v. Canastota Cent. Sch. Dist., 146 F.3d 123, 124-25 (2d Cir. 1998) (relying on the general rule that a non-attorney parent must be represented by counsel in bringing an action on behalf of her child). See also Dacyna v. Sch. Dist. of Phila., No. 92-CV-2428, 1992 WL 277993, at *1 (E.D. Pa. Oct. 2, 1992) (stating, in an IDEA case, that a non-lawyer is not entitled to represent his children in place of an attorney in federal court); Lawson v. Edwardsburg Public School, 751 F. Supp. 1257, 1258-59 (W.D. Mich. 1990) (holding that father could not represent daughter's interests in an EHA case, since he was not an attorney).

While neither the Second nor the Eleventh Circuit considered the argument that the IDEA creates joint substantive rights in parents and children, we stillfind that the reasoning of these courts supports our conclusion.

## C. Policy Considerations

Although we believe that the foregoing discussion is dispositive, we address a number of policy arguments pressed by the Collinsgrus, which, they claim, make their reading of the IDEA the most pragmatic reading of the statute. First and foremost, they remind us of the hard practical reality that parents are often the only available advocates for a child's right to an appropriate education.

19

We acknowledge this to be true, for most attorneys will be reluctant to take on cases like this, characterized as they are by voluminous administrative records, long administrative hearings, and specialized legal issues, without a significant retainer. While we are sympathetic to this argument, it does not carry the day against the analysis set forth above. We note too that Congress obviously contemplated that some parents of disabled children who were successful in their civil appeals would be unable to pay their lawyer's fees, as evidenced by the fact that Congress included provisions for attorneys' fees in the IDEA. See 20 U.S.C. S 1415(i)(3)(B)-(G).2

The Collinsgrus also argue that the general policy behind the IDEA favors their argument. In their view, the right of parents to control and financially support their child's education and the rights of children to receive an education are so tightly interwoven that the IDEA must necessarily protect both sets of rights and must render parents real parties in interest as to every claim brought under the IDEA. However, we observe that under the IDEA, a disabled child can receive a free appropriate education even if the child has no parents; surrogates may act on behalf of a child to the same extent that a parent could. See S 1415(b)(2). In contrast, parents have no rights under the IDEA if they do not have a disabled child seeking an education under that statute. To us, this is further evidence that the rights at issue here are divisible, and not concurrent.

_____

2. The Collinsgrus also note that a number of courts, without questioning the practice, have allowed parents to represent their children pro se in federal court. See, e.g., Muth v. Central Bucks Sch. Dist., 839 F.2d 113 (3d Cir. 1988), rev'd on other grounds sub nom. Dellmuth v. Muth, 491 U.S. 223 (1989); Kruelle v. New Castle County Sch. Dist., 642 F.2d 687 (3d Cir. 1981); see also Susan R.M. v. Northeast Indep. Sch. Dist., 818 F.2d 455 (5th Cir. 1987); Gregory K. v. Longview Sch. Dist., 811 F.2d 1307 (9th Cir. 1987); Rettig v. Kent City Sch. Dist., 788 F.2d 328 (6th Cir. 1986); Schreiber v. Ridgewood Bd. of Educ., 952 F. Supp. 205 (D.N.J. 1997). However, in none of these cases did the court consider whether the IDEA permits parental representation. Therefore, while we acknowledge that this practice reflects the fact that it is difficult
for parents to find lawyers to take these cases, we reject the suggestion that these cases should guide our decision.

20

We conclude that the IDEA's language and legislative history, as well as relevant case law and policy considerations, suggest that Congress did not clearly intend to create joint rights in parents under the IDEA. Therefore, we will affirm the district court's dismissal without prejudice of Francis's claims on the ground that his parents may not represent him in federal court.

ROTH, Circuit Judge, concurring in part and dissenting in part:

Although I concur with the majority's conclusion that the District Court's decision here is immediately appealable, I respectfully dissent from their conclusion in Part III that the Collinsgrus do not have joint rights with their son under the IDEA which they may pursue pro se in the federal courts. I believe that these rights arise from the special nature of the relationship between parents and their children and from the role of parents in directing their children's education rights and opportunities. They are the rights of both the parents and the children, and they are overlapping and inseparable. In enforcing their own rights under the Act, parents are also acting on behalf of their child. This is so because parents are responsible for their children's education. See Meyer v. Nebraska, 262 U.S. 390, 400 (1923) ("[I]t is the natural duty of the parent to give his children education suitable to their station in life. . ..").
Parents are entitled to make fundamental decisions regarding that education. See, e.g., Pierce v. Society of Sisters, 268 U.S. 510 (1925) (enjoining enforcement of Compulsory Education Act preventing parents from choosing to send their children to private schools); Meyer, 262 U.S. at 400-03 (holding that parents are entitled to control the education of their children and that the state may not arbitrarily proscribe certain areas of instruction).
For this reason, I find the Collinsgrus to be real parties in interest in this case, who are entitled to pursue that indivisible concern which is both their own and their child's educational goals.

Moreover, this result would be consistent with the primary purpose of the IDEA -- to assure an appropriate public education to children with disabilities. The focus of the IDEA rests upon ensuring appropriate educational opportunities for children with disabilities. But to accomplish this, the Act recognizes the integral role of parents in effectuating its educational goals. This recognition is evinced in the language and structure of the Act and in the procedural safeguards that are included to ensure active parental involvement at all stages of the development and implementation of a child's individual education program.

22

A key factor in the successful implementation of the goals of the IDEA are the procedural safeguards that states and localities are required to accord to "children with disabilities and their parents or guardians" in order to assure "the provision of a free appropriate public education." 20 U.S.C. S 1415(a). The Act requires educational agencies to provide "an opportunity for parents or guardian of a handicapped child to examine all relevant records with respect to the identification, evaluation, and educational placement of the child, and the provision of a free appropriate public education to such child, and to obtain an independent evaluation of the child." 20 U.S.C. S 1415(b)(1)(A). The educational agency must also provide "written prior notice to the parents or guardian of the child whenever such agency or unit -- (i) proposes to initiate or change, or (ii) refuses to initiate or change, the identification, evaluation or educational placement of the child or the provision of a free appropriate public education to the child." 20 U.S.C. S 1415(b)(1)(C). In addition the educational agency must provide parents with "an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. S 1415(b)(1)(E).

These protections demonstrate that Congress envisioned that parents would play an active and informed role in the evaluation and education of their children. The Senate Committee report recommending passage of the IDEA's precursor statute explicitly states that,

> [b]y changing the language [of the provision relating to individualized educational programs] to emphasize the process of parent and child involvement . . . the Committee intends to clarify that such individual planning conferences are a way to provide parent involvement and protection to assure that appropriate services are provided to a handicapped child.

Education for All Handicapped Children Act of 1975, S. Rep. No. 94-168, at 11-12 (1975), reprinted in, 1975 U.S.C.C.A.N. 1425, 1435. In interpreting the IDEA, the Supreme Court has also cautioned that "[t]he primary responsibility for formulating the education to be accorded

23

a handicapped child . . . was left by the Act to state and local educational agencies in cooperation with the parents or guardian of the child." Board of Education v. Rowley, 458 U.S. 204, 207 (1982). Courts should avoid imposing their views regarding preferred educational methods. Rather, "Congress sought to protect individual children by providing for parental involvement in the development of state plans and policies and in the formulation of the child's individual educational program." Id. at 208.

The Act also provides substantial due process protections in the form of administrative proceedings and an appeals procedure in the event that parents have complaints regarding the educational services provided to their children. "The parents or guardian shall have an opportunity for an impartial due process hearing" before the local educational agency, 20 U.S.C. S 1415(b)(2), and for an impartial review on appeal to a state educational agency. 20 U.S.C. S 1415(c). At these hearings all parties, specifically parents, are accorded:

> (1) the right to be accompanied and advised by counsel and by individuals with special knowledge or training with respect to the problems of handicapped children,

> (2) the right to present evidence and confront, cross-examine, and compel the attendance of witnesses,

> (3) the right to a written or electronic verbatim record of such hearing, and

> (4) the right to written findings of fact . . ..

20 U.S.C. S 1415(d). Thus, during administrative proceedings under the IDEA, the Act explicitly envisions that parents will act as advocates for their child's right to an appropriate education. Congress has also taken steps to ensure the effectiveness of parents as advocates during administrative proceedings by authorizing the establishment of training centers to assist parents in understanding their rights and their children's' rights under the Act and to help parents to participate effectively in administrative due process hearings. 20 U.S.C. S 1415(e)(2)(B)(I).

24

At the conclusion of all administrative proceedings, the Act provides the right to bring a civil action in either federal or state court to "[a]ny party aggrieved by the findings and decision" made during the administrative proceedings. 20 U.S.C. S 1415(e). Although the language of the Act clearly delineates an active role for parents during administrative proceedings under the IDEA, the Act is silent with regard to the nature of the role of parents during federal court proceedings under the Act. Thus, it is not clear from the language of the Act whether parents are "aggrieved parties" able to bring a court action on their own behalf, or whether the right to an appeal belongs to their child or belongs to both parents and child.

The parents here have asserted their own claim under the IDEA which is still pending in the District Court. The District Court, however, denied the parents' request that the court clarify which of the claims before it were claims of the parents. The stated reason for that denial was that the parents sought an advisory opinion.

Nevertheless, despite the absence of explicit language in the IDEA conclusively determining the role of parents in IDEA appeals, the purpose and language of the IDEA presuppose the active involvement of parents in enforcing the educational rights of their children. Through the IDEA, Congress gave to all children with disabilities the substantive right to an appropriate education. Children, however, whether disabled or not, are not able to evaluate the education they are receiving or to request changes in the resources and opportunities made available to them. The IDEA reflects the practical recognition that parents are the persons who are vested with the authority and the obligation to oversee their child's education and to enforce their child's rights under the Act. The Act also invests parents with the procedural rights and protections necessary to ensure that they receive access to the information and resources necessary to enforce the substantive protections and guarantees of the IDEA.

The Act explicitly defines the rights of parents during administrative proceedings. See 20 U.S.C.S 1415. Although the Act does not contain the same explicit definition of the rights of parents during appeals brought in federal court,

there is evidence that Congress did not intend parental involvement under the IDEA to be confined to the administrative process. Nor does it make sense, in the absence of clear Congressional intent, to deny parents, who are parties with full procedural protections during administrative proceedings under the Act, the right to challenge the outcome of these proceedings.

Evidence of congressional intent regarding the role of parents during federal court proceedings under the IDEA may be gleaned from the amendment of the Act to include a fee-shifting provision, authorizing the award of attorneys' fees to plaintiffs who prevail in appeals from administrative proceedings. Under the Act, attorneys' fees will be awarded "to the parents or guardian of a child or youth with a disability who is the prevailing party." 20 U.S.C. S 1415(e)(4)(B). Attorneys' fees will not be awarded if the parents reject a settlement agreement offering more favorable relief than is ultimately obtained in the judicial proceedings. 20 U.S.C. S 1415(e)(4)(D)(iii). In contrast, "an award of attorneys' fees and related costs may be made to a parent or guardian who is the prevailing party and who was substantially justified in rejecting the settlement offer." 20 U.S.C. S 1415(e)(4)(E) (emphasis added).

The legislative history of the fee-shifting provisions states that, "Congress' original intent was that due process procedures, including the right to litigation if that became necessary be available to all parents." Handicapped Children's Protection Act of 1986, S. Rep. 99-112, at 2, reprinted at, 1986 U.S.C.C.A.N. 1798, 1799. The Senate Committee Report explicitly states that the fee-shifting provision should not limit the payment of attorneys' fees to nonprofit, publicly-funded organizations who provide legal assistance to parents. Rather, the Committee members endorsed the principle that "the parents or legal representative of handicapped children must be able to access the full range of available remedies in order to protect their handicapped children's educational rights." Id. at 17, reprinted at, 1986 U.S.C.C.A.N. at 1806. In this case, the Collinsgrus argue that the fee-shifting provisions are insufficient to protect their interests under the Act. They have not been able to find any attorney to represent them

26

in the IDEA action. Their only remaining avenue to protect their son's educational rights under the Act is to proceed pro se with their challenge to the administrative denial of special education benefits.

The right of children to receive an appropriate education may well be meaningless without parents to guide the evaluation of their needs and to monitor the implementation of their individualized education program. The procedural safeguards afforded to parents under the IDEA, including the right to receive attorneys' fees, codify the role of parents as the guardians of their children's education. In light of the special relationship between parents and their children and the special role of parents in enforcing their children's rights under the IDEA, the right of parents to control the education of their child and the right of children to receive an appropriate education are highly interwoven and interdependent. Accordingly, I conclude that parents who wish to challenge the outcome of administrative proceedings under the IDEA are aggrieved parties with the right to bring an appeal under the Act. Thus, the rights created by the IDEA are effectively shared by children and their parents. As parties to IDEA proceedings, pursuant to 28 U.S.C. S 1654, parents should be able to proceed pro se in IDEA appeals brought in federal court to enforce their own rights and those of their children.

Moreover, the rights at stake in an IDEA proceeding are markedly different from those raised by a tort claim. A child's common law claim for damages does not invoke the fundamental rights and interests of a parent in the same manner as a claim for educational benefits under the IDEA. Indeed, many of the benefits of an appropriate education will be lost if they are not timely pursued. Cf. Osei-Afriyie, 937 F.2d at 882 (noting that under Pennsylvania law, the civil claims of minors are tolled until they reach the age of 18). Because parents bear the ultimate responsibility for guaranteeing their child's right to an education, they should be afforded all available opportunities to enforce and protect that right.

27

I would therefore recognize the right of parents to proceed pro se in an IDEA case on their child's behalf, as well as on their own behalf.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit