Justice Scalia,
with whom
Justice Thomas joins, concurring in the judgment in part and dissenting in part.
I would hold that parents have the right to proceed pro se under the Individuals with Disabilities Education Act (IDEA), 20 U. S. C. § 1400 et seq. (2000 ed. and Supp. IV), when they seek reimbursement for private school expenses *536 or redress for violations of their own procedural rights, but not when they seek a judicial determination that their child’s free appropriate public education (or FAPE) is substantively inadequate.
Whether parents may bring suits under the IDEA without a lawyer depends upon the interaction between the IDEA and the general pro se provision in the Judiciary Act of 1789. The latter, codified at 28 U. S. C. § 1654, provides that “[i]n all courts of the United States the parties may plead and conduct their own cases personally or by counsel.” (Emphasis added.) The IDEA’S right-to-sue provision, 20 U. S. C. § 1415(i)(2)(A) (2000 ed., Supp. IV), provides that “[a]ny party aggrieved by the findings and decision [of a hearing officer] shall have the right to bring a civil action with respect to the [administrative] complaint.” (Emphasis added.) Thus, when parents are “parties aggrieved” under the IDEA, they are “parties” within the meaning of 28 U. S. C. § 1654, entitled to sue on their own behalf.[1]
As both parties agree, see Tr. of Oral Arg. 7; Brief for Respondent 37, “party aggrieved” means “[a] party entitled to a remedy; esp., a party whose personal, pecuniary, or property rights have been adversely affected by another person’s actions or by a court’s decree or judgment,” Black’s Law Dictionary 1154 (8th ed. 2004); see also ante, at 529-530. This case thus turns on the rights that the IDEA accords to parents, and the concomitant remedies made available to them. Only with respect to such rights and remedies are *537 parents properly viewed as “parties aggrieved,” capable of filing their own cases in federal court.
A review of the statutory text makes clear that, as relevant here, the IDEA grants parents only two types of rights.[2] First, under certain circumstances “a court or a hearing officer may require the [school district] to reimburse the parents” for private school expenditures “if the court or hearing officer finds that the [school district] had not made a free appropriate public education available to the child.” 20 U. S.C. § 1412(a)(10)(C)(ii) (2000 ed., Supp. IV) (emphasis added). Second, parents are accorded a variety of procedural protections, both during the development of their child’s individualized education program (IEP), see, e.g., § 1414(d)(l)(B)(i) (parents are members of their child’s IEP team); § 1415(b)(1) (parents must have an opportunity to examine records and participate in IEP meetings), and in any subsequent administrative challenges, see, e. g., §§ 1415(b)(6), (8) (parents may file administrative due process complaints). It is clear that parents may object to procedural violations at the administrative due process hearing, see § 1415(b)(6)(A), and that a hearing officer may provide relief to parents for certain procedural infractions, see § 1415(f) (3)(E)(ii). Because the rights to reimbursement and to the various procedural protections are accorded to parents themselves, they are “parties aggrieved” when those rights are infringed, and may accordingly proceed pro se when seeking to vindicate them.[3]
*538 The Court goes further, however, concluding that parents may proceed pro se not only when they seek reimbursement or assert procedural violations, but also when they challenge the substantive adequacy of their child’s FAPE — so that parents may act without a lawyer in every IDEA case. See ante, at 527-533. In my view, this sweeps far more broadly than the text allows. Out of this sprawling statute the Court cannot identify even a single provision stating that parents have the substantive right to a FAPE. The reason for this is readily understandable: The right to a free appropriate public education obviously inheres in the child, for it is he who receives the education. As the IDEA instructs, participating States must provide a “free appropriate public education ... to all children with disabilities . . . .” § 1412(a)(1)(A) (2000 ed., Supp. IV). The statute is replete with references to the fact that a FAPE belongs to the child. See, e. g., § 1400(d)(1)(A) (IDEA designed “to ensure that all children with disabilities have available to them a free appropriate public education”); § 1408(a)(2)(C)(i) (referring to “the right of a child” to “receive a free appropriate public education”); § 1411(e)(3)(F)(i) (same); § 1414(a)(l)(D)(i)(II) (referring to an agency “that is responsible for making a free appropriate public education available to a child”); § 1415(b)(6)(A) (referring to “the provision of a free appropriate public education to [a] child”). The parents of a disabled child no doubt have an interest in seeing their child receive a proper education. But there is a difference between an interest and a statutory right. The text of the IDEA makes clear that parents have no right to the education itself.[4]
*539 The Court concedes, as it must, that while the IDEA gives parents the right to reimbursement and procedural protection in explicit terms, it does not do so for the supposed right to the education itself. Ante, at 529-530. The obvious inference to be drawn from the statute’s clear and explicit conferral of discrete types of rights upon parents and children, respectively, is that it does not by accident confer the parent-designated rights upon children, or the children-designated rights upon parents. The Court believes, however, that “the statute prevents us from placing too much weight on [this] implicatio[n].” Ante, at 530. That conclusion is in error. Nothing in “the statute” undermines the obvious “implication” of Congress’s scheme. What the Court relies upon for its conclusion that parents have a substantive right to a FAPE is not the “statutory structure,” ibid., but rather the myriad procedural guarantees accorded to parents in the administrative process, see ante, at 530-531. But allowing parents, by means of these guarantees, to help shape the contours of their child’s education is simply not the same as giving them the right to that education. Nor can the Court sensibly rely on the provisions governing due process hearings and administrative appeals, the various provisions that refer to the “parent’s complaint,” see, e. g., 20 U. S. C. § 1415(i)(3)(B)(i)(III) (2000 ed., Supp. IV), or the fact that the right-to-sue provision, § 1415(i)(2)(A), refers to the administrative complaint, which in turn allows parents to challenge “any matter” relating to the provision of a FAPE, § 1415(b)(6)(A). These provisions prove nothing except what all parties concede: that parents may represent their child pro se at the administrative level. See Brief for Petitioners 17-18,40; Brief for United States as Amicus Curiae 12; Brief for Respondent 13, 44; see also Collinsgru v. Palmyra Bd. of Ed., 161 F. 3d 225, 232 (CA3 1998). Parents *540 thus have the power, at the administrative stage, to litigate all of the various rights under the statute since at that stage they are acting not only on their own behalf, but on behalf of their child as well. This tells us nothing whatever about whose rights they are.[5] The Court’s spraying statutory sections about like buckshot cannot create a substantive parental right to education where none exists.
Harkening back to its earlier discussion of the IDEA’S “text and structure” (by which it means the statute’s procedural protections), the Court announces the startling proposition that, in fact, the “IDEA does not differentiate . . . between the rights accorded to children and the rights accorded to parents.” Ante, at 531. If that were so, the Court could have spared us its painful effort to craft a distinctive parental right out of scattered procedural provisions. But of course it is not so. The IDEA quite clearly *541 differentiates between the rights accorded to parents and their children. See Emery v. Roanoke City School Bd., 432 F. 3d 294, 299 (CA4 2005) (“[P]arents and children are distinct legal entities under the IDEA” (internal quotation marks omitted)). As even petitioners’ amici agree, “Congress specifically indicated that parents have rights under the Act that are separate from and independent of their children’s rights.” Brief for Senator Edward M. Kennedy et al. as Amici Curiae 18. Does the Court seriously contend that a child has a right to reimbursement, when the statute most definitively provides that if “the parents of a child with a disability” enroll that child in private school, “a court . . . may require the [school district] to reimburse the parents for the cost of that enrollment”? § 1412(a)(10)(C)(ii) (2000 ed., Supp. IV) (emphasis added); see also Brief for Sen. Kennedy et al., supra, at 21 (“The right of reimbursement runs to the parents”). Does the Court believe that a child has a procedural right under §§ 1414(d)(l)(C)(i)-(iii) (2000 ed., Supp. IV), which gives parents the power to excuse an IEP team member from attending an IEP meeting? The IDEA does not remotely envision communal “family” rights.
The Court believes that because parents must prove the substantive inadequacy of a FAPE before obtaining reimbursement, § 1412(a)(10)(C)(ii), and because the suitability of a FAPE may also be at issue when procedural violations are alleged, § 1415(f)(3)(E)(ii), it is “out of accord with the statute’s design” to “prevent [parents] from obtaining a judgment mandating that the school district provide their child” with a FAPE. Ante, at 532. That is a total non sequitur. That Congress has required parents to demonstrate the inadequacy of their child’s FAPE in order to vindicate their own rights says nothing about whether parents possess an underlying right to education. The Court insists that the right to a FAPE is the right “most fundamental to the Act.” Ante, at 530. Undoubtedly so, but that sheds no light upon whom the right belongs to, and hence upon who can sue in their *542 own right. Congress has used the phrase “party aggrieved,” and it is this Court’s job to apply that language, not to run from it.
The Court further believes that a distinction between parental and child rights will prove difficult to administer. I fail to see why that is so. Before today, the majority of Federal Courts of Appeals to have considered the issue have allowed parents to sue pro se with respect to some claims, but not with respect to the denial of a FAPE. See Mosely v. Board of Ed. of Chicago, 434 F. 3d 527, 532 (CA7 2006); Collinsgru, 161 F. 3d, at 233; Wenger v. Canastota Central School Dist., 146 F. 3d 123, 126 (CA2 1998) (per curiam); Devine v. Indian River Cty. School Bd., 121 F. 3d 576, 581, n. 17 (CA11 1997). The Court points to no evidence suggesting that this majority rule has caused any confusion in practice. Nor do I see how it could, since the statute makes clear and easily administrate distinctions between parents’ and children’s legal entitlements.
Finally, the Court charges that the approach taken by the majority of Courts of Appeals would perpetrate an “injustice,” ante, at 533, since parents who do not seek reimbursement or allege procedural violations would be “without a remedy,” ante, at 532. That, of course, is not true. They will have the same remedy as all parents who sue to vindicate their children’s rights: the power to bring suit, represented by counsel. But even indulging the Court’s perception that it is unfair to allow some but not all IDEA parents to proceed pro se, that complaint is properly addressed to Congress, which structured the rights as it has, and limited suit to “party aggrieved.” And there are good reasons for it to have done so. Pro se cases impose unique burdens on lower courts — and on defendants, in this case the schools and school districts that must hire their own lawyers. Since pro se complaints are prosecuted essentially for free, without screening by knowledgeable attorneys, they are much more likely to be unmeritorious. And for courts to figure them *543 out without the assistance of plaintiff’s counsel is much more difficult and time consuming. In both categories of pro se parental suit permitted under a proper interpretation of the statute, one or the other of these burdens is reduced. Actions seeking reimbursement are less likely to be frivolous, since not many parents will be willing to lay out the money for private education without some solid reason to believe the FAPE was inadequate. And actions alleging procedural violations can ordinarily be disposed of without the intensive record review that characterizes suits challenging the suitability of a FAPE.
* * *
Petitioners sought reimbursement, alleged procedural violations, and requested a declaration that their child’s FAPE was substantively inadequate. Ante, at 521. I agree with the Court that they may proceed pro se with respect to the first two claims, but I disagree that they may do so with respect to the third.

 As the Court notes, ante, at 520, 535, petitioners also argue that even if parents do not have their own rights under the statute, they nonetheless may act on behalf of their child without retaining a lawyer. Both sides agree, however, that the common law generally prohibited lay parents from representing their children in court, a manifestation of the more general common-law rule that nonattorneys cannot litigate the interests of another. See Brief for Petitioners 37; Brief for Respondent 9-10; see also, e. g., Collinsgru v. Palmyra Bd. of Ed., 161 F. 3d 225, 232 (CA3 1998). Nothing in the IDEA suggests a departure from that rule.

 Because the grant of those rights is clear, and because I find no statutory basis for any other rights, I need not decide whether the Spending Clause's “clear notice” requirement is applicable here. Cf. Arlington Central School Dist. Bd. of Ed. v. Murphy, 548 U. S. 291, 296 (2006).

 Of course when parents assert procedural violations, they must also allege that those violations adversely affected the outcome of the proceedings. Under Article III, one does not have standing to challenge a procedural violation without having some concrete interest in the outcome of the proceeding to which the violation pertains, see Lujan v. Defenders of *538 Wildlife, 504 U. S. 555, 571-578 (1992), here the parents’ interest in having their child receive an appropriate education.

 Nor can a parental right to education be justified, as the Court attempts, see ante, at 532-533, on the theory that the IDEA gives parents a legal right to free schooling for their child. Parents acquire such a right *539 (in limited circumstances) only when they enroll their child in a private institution. § 1412(a)(10)(C)(ii) (2000 ed., Supp. IV).

 Contrary to indications in the Court’s opinion, ante, at 530-581, and to the apparent language of the statute, a hearing officer does not always render a decision “on substantive grounds based on a determination of whether the child received a free appropriate public education.” § 1415(f)(3)(E)(i) (2000 ed., Supp. IV). That provision is “[s]ubject to clause (ii),” ibid., which provides that “[i]n matters alleging a procedural violation” a hearing officer can grant relief if “the procedural inadequacies . . . significantly impeded the parents’ opportunity to participate in the decisionmaking process regarding the provision of a free appropriate public education to the parents’ child,” § 1415(f)(3)(E)(ii)(II). It is true that a hearing officer who accepts such an allegation nominally grants relief by concluding that the child did not receive a FAPE, § 1415(f) (3) (E)(ii), but it is clear from the structure of the statute that this is not a decision on the substantive adequacy of the FAPE, but rather the label attached to a finding of procedural defect. Petitioners agree with me on this point. See Brief for Petitioners 31, n. 23. See also 20 U. S. C. § 1415(f)(3)(E)(iii) (2000 ed., Supp. IV) (“Nothing in this subparagraph shall be construed to preclude a hearing officer from ordering a local educational agency to comply with procedural requirements under this section”). In any event, even if a hearing officer was required to render a decision on the substantive adequacy of the FAPE, that feature of the statute still gives no clue as to whether parents’ vindication of that substantive right at the administrative stage is on their own behalf or on behalf of the child.